[Civ. No. 28372. First Dist., Div. One. June 30, 1972.]

SCHRADER IRON WORKS, INC., Plaintiff and Respondent, v. WAYNE LEE et al., Defendants and Appellants.

Counsel

Alley, Lippa & Walker, Alley & Lippa and Roger D. Lippa for Defendants and Appellants.

Connella & Sherburne and Frank J. Baumgarten for Plaintiff and Respondent.

## Opinion

**MOLINARI, P. J.**—Defendants Wayne Lee and Tom T. Lee (sometimes hereinafter referred to as the Lees) and E. A. Norwitt and Annabelle Norwitt (sometimes hereinafter referred to as the Norwitts) appeal from a judgment entered against them in favor of plaintiff Schrader Iron Works, Inc., a corporation (hereafter Schrader) in an action to foreclose a mechanic's lien. The judgment decreed that the Lees and the Norwitts owed Schrader the sum of $5,991.95, that plaintiff had a lien on the property involved for the sale of said property, for the application of the proceeds of said sale to the aforementioned indebtedness, and for the recovery of any deficiency against the Lees and Norwitts.

### The Facts

On July 8, 1965, Mustin Construction Company (hereinafter "Mustin") entered into a contract with Schrader for the production and erection of structural steel for a building Mustin was constructing on land owned by it. During the course of construction a "For Sale" sign was posted on the building. The structural steel produced by Schrader for the subject building was installed by Schrader on two separate days, i.e., on September 22, 1965 and on October 15, 1965.

On October 21, 1965, Mustin and the Lees executed a deposit receipt agreement calling for the exchange of the Mustin property for property owned by the Lees. The broker representing the Lees was the Cable Car Realty and the transaction was handled by its agent George Fung. Pursuant to an oral agreement Mustin and the Lees agreed that the escrow would not close until the notice of completion was filed because the Lees wanted to be sure that the property was clear and they needed time to secure financing.

Mustin did not pay the sum of $4,750 due Schrader for the structural steel work within the 30-day period provided for in the contract between the parties. The contract provided that said sum was to be paid within 30 days after the steel was erected. Schrader contacted Mustin and was

informed that Mustin did not have the necessary funds and that it was trying to sell the property. Schrader had dealt with Mustin for approximately three years and was aware that it built on speculation. Schrader sometimes allowed past due accounts to continue until the notice of completion was filed in order to preserve good will and insure future contracts.

On January 11, 1966, Mustin recorded a notice of completion. About 15 days later Mustin contacted Schrader and requested that it delay filing its claim of mechanic's lien until the end of the statutory period. Although it was Schrader's practice to file such a claim within 30 days after the recordation of the notice of completion, Schrader acceded to Mustin's request.

A deed from Mustin conveying the subject property to the Lees was recorded on February 24, 1966. The Cable Car Realty had obtained a title report and a policy of title insurance on the subject property. The report showed that a notice of completion had been filed. In accordance with its normal procedures, Schrader obtained a title report to verify the description of the property. The report, which was dated March 7, 1966, showed that Mustin had conveyed the property to the Lees on February 7, 1966, and that the deed had been recorded on February 24, 1966. This was Schrader's first knowledge that the Lees were involved, although there was testimony that upon the execution of the agreement of sale between Mustin and the Lees two "sold" signs were placed upon the subject property by Cable Car Realty. None of Schrader's employees recalled having seen these signs or any "for sale" signs on the building. On March 8, 1966, Schrader recorded its claim of lien.

As a part of its agreement of sale with the Lees, Mustin received a second deed of trust upon the property naming Mustin as the beneficiary. An assignment of this deed of trust from Mustin to the Norwitts was recorded on March 22, 1966. The Norwitts had no personal knowledge of any liens although they had obtained a title report. At the trial Mr. Norwitt could not remember whether the report was one he had ordered or the one obtained by the Lees.

### Contentions

The Lees and the Norwitts raise several issues. Their main contention is that Schrader did not have a valid lien. They argue that Schrader was required to serve a prelien notice in accordance with Code of Civil Procedure section 1193.[1] In the alternative, they argue that even if Schrader was not required to serve a prelien notice, it is estopped to deny that a pre-

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

lien notice was required. In conjunction with this latter argument, they urge that the court erred in rejecting their request for a special finding on the question of estoppel as it was a material issue. They also argue that even if an adverse finding is implicit, it is unsupported by the evidence. The Norwitts contend, further, that their deed of trust is not subject to any claim of Schrader and that Schrader may not assert its invalid claim of mechanic's lien against them.

The Lees' and the Norwitts' second contention is that there is no basis for a money judgment, a deficiency judgment, execution of judgment, or interest charges as they had no contract with Schrader. Finally, they request that, in the event the judgment is not reversed, it be vacated and a new trial granted because of alleged irregularities below which prevented a fair trial.

### Prelien Notice

The trial court determined that Schrader was not required to give a prelien notice to the Lees and that Schrader had complied with the statutory provisions respecting the perfection of mechanics' liens.

At the time Schrader attempted to perfect his lien, former section 1193, subdivision (a) provided, in relevant part, that "Except one under direct contract with the owner or one performing actual labor for wages, every person who furnishes labor, service, equipment or material for which a lien otherwise can be claimed under this chapter, must, as a necessary prerequisite to the validity of any claim of lien subsequently filed, cause to be given not later than 15 days prior to the filings of a claim of lien a written notice as prescribed by this section, to the owner or reputed owner and to the original contractor."[2]

The issue presented is whether the notice prescribed in section 1193, subdivision (a) must be given to an owner of property who did not directly contract with the lien claimant notwithstanding that there was a direct contract between the lien claimant and a previous owner for the performance of the work or the furnishing of materials for which the lien is claimed.

"In construing a statute our concern is to ascertain and to give effect to the legislative intent. [Citations.] In ascertaining the intent articulated in a statute, the court should first turn to the words of the statute to determine the will of the Legislature [citations] and give effect to the statute according to the usual, ordinary import of the language employed

---

[2]This section has been superseded by Civil Code section 3097 and its provisions have been significantly altered by the amendments.

in framing it. [Citations.]" (*Noroian* v. *Department of Administration,* 11 Cal.App.3d 651, 654-655 [89 Cal.Rptr. 889].)

■ Analyzing the subject statute pursuant to the foregoing principle of statutory construction, we interpret it to mean that the notice prescribed in section 1193, subdivision (a) must be given to the owner of the property at the time the claimant seeks to perfect his lien, except where the claimant has entered into a direct contract with a person who was the owner of the property at the time the contract was made for the performance of the work or the furnishing of materials. We think this is the plain import of the statute which is made clear by the express language prefacing the statute with the proviso excepting "one under direct contract with the owner" from the requirement of giving notice of the intention to file a claim of lien.

■ From a reading of the statute we think it was the legislative intent to protect the owner who has entered into a contract for work and labor to be performed on his building, or for materials to be furnished therefor, from liens that might be placed on his building by persons with whom he did not contract, such as subcontractors, and whose identity is unknown to the owner. ■ ■ ■ As observed by the Attorney General: "Section 1193 was enacted in 1959 to give increased financial security to the building industry by providing early notice to the owner, lender, and general contractor of the presence on the job of persons, including contractors, entitled to file a mechanic's lien and the amount of their potential liens. On a typical construction job, it is not unusual for the property owner and lending institution not to know the identity of persons furnishing labor and supplies to the job, other than the general contractor with whom they have dealt directly. Section 1193 was intended as a means of identifying these unknown persons, who are potential lien claimants, so that meaningful communication could be had among the property owner, lending institution and general contractor to insure timely payment of these persons' claims and avoidance of costly work stoppages, mechanics' liens foreclosure sales, and double payments by the owner. [Citation.]" (51 Ops.Cal.Atty.Gen. 69.)[3] (See *Windsor Mills* v. *Richard B. Smith, Inc.,* 272 Cal.App.2d 336, 340 [77 Cal.Rptr. 300]; *Wand Corp.* v. *San Gabriel Valley Lbr. Co.,* 236 Cal.App.2d 855, 861 [46 Cal.Rptr. 486]; *Alta Bldg. Material Co.* v. *Cameron,* 202 Cal.App.2d 299, 303-304 [20 Cal.Rptr. 713].)

[3]In determining the Legislature's intent, the courts may turn to certain extrinsic sources for guidance. These include the opinions of the Attorney General which are entitled to great weight even though they are not controlling. (*Noroian* v. *Department of Administration, supra,* 11 Cal.App.3d 651, 655, 656, fn. 2.)

An owner who succeeds to the ownership of property is in a position where he can protect himself from a mechanic's lien which has attached to the property before the conveyance to him was made. He can inquire of his vendor whether he has made a direct contract for the furnishing of labor, service, equipment or material to or for said property, and if so, the date thereof and the identity of the persons with whom he has contracted. The purchaser may protect himself from liability against mechanics' liens by appropriate provisions in the agreement of sale, and he may withhold completion of the sale until it can be safely determined that no mechanics' liens have attached to the property. The purchaser is also in a position to inspect the property to ascertain when there has been any construction or alteration of the property. Finally, he may procure a title search to ascertain whether a notice of completion has been filed and whether mechanics' liens have been recorded, and he may procure a title insurance policy insuring him against liability for mechanics' liens.

We observe that in the instant case the Lees did obtain a title report prior to acquiring title and that such report revealed that a notice of completion had been recorded on January 11, 1966 by Mustin. The Lees knew or should have known that the lien period had not expired when they took title on February 24, 1966. (See former § 1193.1, now Civ. Code, §§ 3093, 3097, 3115 to 3118.) Moreover, the Lees were well aware that a notice of completion was to be filed since they entered into an oral agreement with Mustin that the escrow would not be closed until the notice of completion had been filed. The record discloses, further, that while the construction was in progress, and while the negotiations for the sale were pending, defendant Wayne Lee visited the property daily and spoke with construction workers. It is apparent that the Lees had knowledge of the construction and that they were on notice that mechanics' liens could attach to the property. It is equally apparent that they could have taken proper steps to protect themselves against mechanics' liens.

 We do not think it was in the contemplation of the lien law to put the burden on claimants who have contracted with an owner directly to make inquiry or to search the title records to ascertain whether the owner with whom they had contracted made a conveyance of the property. To interpret the subject statute as urged by defendants would require the contractor to make a day-to-day ascertainment whether there was a new owner of the property. We think it more reasonable to place the burden on the purchaser in view of the objectives and purposes of the mechanics' lien law.

 "The lien of a mechanic or materialman is a constitutional right and attaches to the structure as the material is furnished or labor per-

formed. . . . It exists with all of its force at all times between the furnishing of the material or the performing of the labor, and the expiration of the time within which such notices of lien may be filed." (*People* v. *Moxley,* 17 Cal.App. 466, 468 [120 P. 43]; see *Walker* v. *Lytton Sav. & Loan Assn.,* 2 Cal.3d 152, 156-157 [84 Cal.Rptr. 521, 465 P.2d 497].) Moreover, a lien continues through the period of enforcement. (*Tulloh* v. *Boyce,* 37 Cal.App. 761, 762-763 [174 P. 680, 177 P. 847].) In the instant case plaintiff's lien attached on September 22, 1965, a date prior to the time the Lees entered into an agreement to buy the property.

■ It has long been the law in this state, and the general rule uniformly recognized, that a mechanic's lien has priority if it attaches to the property before the conveyance is made and that the conveyance does not affect liens which have already accrued on the premises. (*Hotaling* v. *Cronise,* 2 Cal. 60, 64; see 53 Am.Jur.2d, Mechanics' Liens, § 277, p. 814.) ■ In view of the objectives of the mechanics' lien law we do not believe that we should conclude, in the absence of a clear intent to do so, that it was the legislative intent in section 1193 to modify this rule to provide that a mechanic would lose his priority if he did not seek out every successive owner with whom he has no privity of contract and upon ascertaining his identity give him a prelien notice. As already indicated, the Legislature has not evinced such intent.

■■■ The precise issue posed by the instant case has not been previously considered by the appellate courts although the purpose of section 1193, subdivision (a), has been explored in several decisions dealing with the notice of non-responsibility provided for in section 1183.1, subdivision (b).[4] (See *Halspar, Inc.* v. *La Barthe,* 238 Cal.App.2d 897 [48 Cal.Rptr. 293]; *Benson Elec. Co.* v. *Hale Bros. Assoc., Inc.,* 246

---

[4]This section provides that any work which is performed with the knowledge of the owner shall be held to have been performed at the owner's request, and that the owner's interest in the property shall be subject to any lien which is filed unless the owner gives a notice of non-responsibility within 10 days after having obtained knowledge of the work. The section "is designed to cover situations where someone who holds less than fee title to land, such as a lessee or conditional purchaser, enters into a contract for the improvement thereof without the knowledge of the owner." (*Frank Curran Lbr. Co.* v. *Eleven Co.,* 271 Cal.App.2d 175, 185 [76 Cal.Rptr. 753].) The section recognizes the interests of the property owner as well as the interests of those providing labor and materials. It "gives the owner under such circumstances the right to insulate his property from the effect of the mechanic's or materialman's lien provided that he posts and records the notice prescribed in the section within 10 days after having actual knowledge of the construction." (*Frank Curran Lbr. Co.* v. *Eleven Co., supra,* at pp. 185-186.) The notice brings " ' ". . . home to those who are expending labor or materials upon a building, the fact that the owner of the land will not be responsible for such labor or materials. . . ." ' " (*Arthur B. Siri, Inc.* v. *Bridges,* 189 Cal.App.2d 599, 602 [11 Cal.Rptr. 322].)

Cal.App.2d 686 [55 Cal.Rptr. 73]; *Scott, Blake & Wynne* v. *Summit Ridge Estates, Inc.,* 251 Cal.App.2d 347 [59 Cal.Rptr. 587].)

In *Halspar* the lien claimant entered into a contract with a lessee. The lessor, who had actual knowledge of the work, failed to give a notice of non-responsibility. The court found that section 1183.1, subdivision (b) created a conclusive presumption which operated to transform the contract with the lessee into a contract with the lessor. The court concluded that the claimant was thus " 'under direct contract with the owner' " and excepted by the terms of section 1193, subdivision (a) from its requirement of serving a prelien notice. (238 Cal.App.2d at pp. 899-900.) *Benson* involved virtually identical facts and was decided by the same court by reference to its opinion in *Halspar.* (*Benson Elec. Co.* v. *Hale Bros. Assoc., Inc., supra,* 246 Cal.App.2d 686, 693.)

In *Scott* the claimant entered into a contract with an owner-developer. Prior to the time the claimant completed his work, the developer conveyed the property to a construction company which had been providing financing. At some point in time an additional party acquired an interest in the property. Although it is not stated when this occurred, the court's reasoning suggests that it was while the work was in progress. (251 Cal.App.2d 347, 352-353.) The court stated that "Where a noncontracting owner has actual knowledge of the improvements being made to his property and fails to avail himself of the mode of exempting his interest from liability for the work provided by section 1183.1, subdivision (b), he is estopped to deny that the work was done at his instance and request. (*Halspar, Inc.* v. *La Barthe,* 238 Cal.App.2d 897 [48 Cal.Rptr. 293], hg. den. Feb. 16, 1966.) Under such circumstances the claimant has a 'direct contract with the owner' for the purposes of section 1193 and consequently is not required to give the notice prescribed therein. (*Halspar, Inc.* v. *La Barthe, supra,* 238 Cal.App.2d 897, 899-900; *Benson Elec. Co.* v. *Hale Bros. Assoc. Inc.,* 246 Cal.App.2d 686, 693 [55 Cal.Rptr. 73].)" (At p. 353.)

■ It is clear that the rule declared in *Halspar, Benson* and *Scott* is not applicable in the instant case because the Lees were not required to file a notice of non-responsibility. They did not become owners of the property until more than one month after the notice of completion was filed. They had no interest in the property at the time Mustin contracted with Schrader and they had no interest in the property at the time Schrader performed its obligations under the contract with Mustin. It is thus apparent that the Lees could not have filed a notice of non-responsibility for they did not own the property at the relevant time. In sum, the facts presented by these cases are totally different from those presented by the instant case. Here we

are not dealing with an owner who, by virtue of his failure to file a notice of non-responsibility when work and labor is done on his property *while* he is an owner, is placed by the conclusive presumption provided for in section 1183.1, subdivision (b), in the status of one who has directly contracted for the work or labor. We are dealing, instead, with one who becomes an owner of property *after* labor and/or materials have been furnished to such property under a direct contract with a predecessor owner. In this situation section 1183, subdivision (b) does not come into play. We are controlled solely by the provisions of section 1193, subdivision (a) which does not require a prelien notice either to the owner who has directly contracted for such labor or materials or to one who succeeds to his interest in the property.

*Estoppel*

The Lees contend that even if Schrader was not required to give them a prelien notice, Schrader is estopped by its own conduct to deny that a prelien notice to the Lees is a prerequisite to a valid lien. We perceive the thrust of this contention to be that because of its conduct Schrader was required under the theory of equitable estoppel to give a prelien notice to the Lees even though under section 1193, subdivision (a) it was not required to do so.

In the instant case estoppel was not pleaded. It is the general rule that where estoppel is an affirmative defense it must be affirmatively averred. (*Phoenix Mutual L. Ins. Co.* v. *Birkelund,* 29 Cal.2d 352, 363 [175 P.2d 5]; *Lucci* v. *United Credit and Collection Co.,* 220 Cal. 492, 497 [31 P.2d 369]; *Auto Auction, Inc.* v. *Riding Motors,* 187 Cal.App.2d 693, 698 [10 Cal.Rptr. 110].) An exception to this rule is where the party in whose favor the estoppel exists at the time of preparing his pleading is without knowledge that his claim must ultimately rest on it. (*Auto Auction, Inc.* v. *Riding Motors, supra; Estate of Pieper,* 224 Cal. App.2d 670, 691 [37 Cal.Rptr. 46]; *Guy* v. *Leech,* 47 Cal.App. 704, 708 [190 P. 1067].) An objection that a defendant did not plead estoppel is waived, however, where evidence thereon is admitted without objection and the issue is fully litigated. (*Pacific Finance Corp.* v. *Foust,* 44 Cal.2d 853, 858 [285 P.2d 632]; *Wynn* v. *Treasure Co.,* 146 Cal.App. 2d 69, 75 [303 P.2d 1067]; *Petersen* v. *Cloverdale Egg Farms,* 161 Cal. App.2d 792, 798 [327 P.2d 127].)

In the instant case it is not claimed by the Lees that they were unaware of the facts on which they predicate estoppel at the time they filed their answer. We are thus relegated to determining whether Schrader has waived

its right to claim that the issue of estoppel was not before the trial court because it failed to object to evidence on this issue and therefore permitted the issue to be fully litigated.

Under the state of the record it appears that the issue of estoppel was tendered to the trial court and that no objection was interposed by Schrader. Although the defense tendered by the answer of the Lees was predicated on their right to a prelien notice under the provisions of section 1193, subdivision (a), the evidence adduced went beyond this issue in that evidence was presented without objection to the conduct of the parties that would be relevant to the question of estoppel. We perceive that the issue whether a prelien notice was required under the terms of the statute was essentially one of law and that evidence concerning the conduct of the parties was, in substantial part, beyond the purview of this legal issue. We observe that in a declaration by counsel for the Lees in support of a motion for new trial it was declared that in a discussion in chambers prior to the commencement of the trial the trial judge was apprised that estoppel was an issue in the case. This assertion was not denied in a counterdeclaration by Schrader's counsel in opposition to the motion for new trial. Moreover, in said declaration it is conceded that estoppel was an issue at the trial.[5]

The Lees predicated the establishment of an equitable estoppel upon the following evidentiary facts developed at the trial: That Schrader knew Mustin planned to sell the property; that Schrader knew there would be a new owner; that Schrader was negligent concerning collection procedures; that it delayed filing the notice of lien; that Schrader cooperated with Mustin by maintaining silence concerning its claim; and that the Lees relied on Schrader's silence in purchasing the property.

At the time findings of fact were being settled the Lees and the Norwitts requested that a specific finding of fact be made on the following issue: "Whether plaintiff's knowledge of Mustin Construction Company's intent to sell the said property before paying plaintiff, plus the posting of the 'SOLD' signs at said property, plus plaintiff's omission to notify the new owner of plaintiff's claim, plus the delay by plaintiff, at the request of Mustin Construction Company, in filing plaintiff's claim of lien, and reliance by defendants Lee on plaintiff's silence, were sufficient to estop plaintiff to claim the benefit of a mechanic's lien without having given

---

[5]In said declaration it is stated as follows: "Counsel for defendants sought during the trial to establish an estoppel based upon knowledge of the fact that the property had been sold and that the MUSTIN CONSTRUCTION COMPANY and MUSTIN were speculative builders."

notice to defendants Lee thereof, before, or within a reasonable time after, filing plaintiff's claim of lien." The trial court declined to make the requested specific finding.

Adverting to the doctrine of estoppel, we note that its application requires the establishment of four elements, to wit: "(1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended that his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. [Citation.]" (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.*, 54 Cal.2d 773, 778 [8 Cal.Rptr. 448, 356 P.2d 192]; *Domarad* v. *Fisher & Burke, Inc.*, 270 Cal.App.2d 543, 555 [76 Cal.Rptr. 529].)

In the present case, Schrader was not obliged to give a prelien notice to the Lees, even if he had actual knowledge that they acquired the property as owners during the period within which he could perfect his lien which had already attached, unless he did something to indicate to the Lees that he would give them such a notice as a prerequisite to the filing of his claim of lien.

Adverting to Schrader's conduct, the record discloses without contradiction that there was no contact or communication between Schrader and the Lees. The trial court specifically found that Schrader was unaware of the negotiations between Mustin and the Lees. This finding was based on substantial evidence. There is nothing in the record to indicate that Schrader had indicated to Mustin or to any other person that it did not intend to perfect its lien if it did not receive payment for its work and labor. We apprehend that estoppel by conduct may not be predicated upon Schrader's agreement with Mustin to withhold the filing of its claim of mechanic's lien until the end of the period provided by statute for such filing. This was a right that Schrader was given by statute. Nor do we perceive that an inference could be drawn that a prelien notice would be given merely because Schrader agreed with Mustin to withhold the filing of a claim of mechanic's lien until the end of the statutory period in order to assist Mustin in his sale of the property so that funds might be realized with which to satisfy Schrader's claim. In sum, the record is devoid of any substantial evidence upon which an inference could be drawn that the Lees reasonably believed that Schrader intended to and would give them a prelien notice.

The Lees, on the other hand, were not ignorant of the true facts. They

knew that the building was under construction while they were negotiating for its purchase. All persons who deal with property during the progress of work thereon are charged with the notice of the claims of mechanics and materialmen. (*Soule & Page* v. *Dawes,* 7 Cal. 575, 576; *Crowell* v. *Gilmore,* 13 Cal. 54, 56.) The Lees were aware that Mustin had filed a notice of completion since they had procured a title report which disclosed such filing. The effect of such notice restricted the time within which lien claims could be filed. The Lees specifically requested that the escrow for the sale of the property not be closed until the notice of completion was filed "because they wanted the property to be clear." The Lees were thus put on notice that mechanics and materialmen might file liens within the prescribed time. Their belief that they would be entitled to prelien notice from any such materialmen or mechanics appears to be based not upon anything that Schrader did or failed to do but upon the erroneous belief that under the law they were entitled to such a notice because they did not directly contract with such mechanics or materialmen.

 Accordingly, under the state of the record, the specific findings requested by the Lees, even if required, would have been adverse to them because, as a matter of law, all of the elements of estoppel were not established. The Lees may not, therefore, complain of the failure of the trial court to make the requested findings. (*Roberts* v. *Graves,* 269 Cal. App.2d 410, 418-419 [75 Cal.Rptr. 130]; *Pry Corp. of America* v. *Leach,* 177 Cal.App.2d 632, 636 [2 Cal.Rptr. 425].)

### Norwitts' Deed of Trust

The Norwitts concede that they took their interest under the deed of trust subject to any valid liens which were perfected before their deed of trust was recorded. (See *Pugh* v. *Moxley,* 164 Cal. 374, 376-377 [128 P. 1037] [overruled on other grounds, *Theisen* v. *County of Los Angeles,* 54 Cal.2d 170, 182 (5 Cal.Rptr. 161, 352 P.2d 529)]; *Simons Brick Co.* v. *Hetzel,* 72 Cal.App. 1, 9 [236 P. 357].) They claim, however, that their interest is not made subject to otherwise invalid liens merely on the ground that the assignment of the deed of trust occurred after the lien was of record. This contention is predicated upon the thesis that if Schrader's claim is invalid for failure to file the prelien notice, or upon the grounds of estoppel, or for any other reason, it is invalid for all purposes and is invalid as to them. Our determination hereinbefore made that Schrader's lien is not invalid puts the Norwitts' contention to rest.

### The Judgment

 The Lees and the Norwitts contend that, even thought the court

properly granted Schrader a judgment of foreclosure, it erred in granting Schrader a money judgment and a deficiency judgment against them. They are correct in this contention. A personal and deficiency judgment may only be obtained against the party personally liable for the material and labor, i.e., a party in privity of contract with the mechanic or materialman. (*Borello* v. *Eichler Homes, Inc.,* 221 Cal.App.2d 487, 496-497 [34 Cal. Rptr. 648]; *Ridens* v. *Economy Home Builders, Inc.,* 104 Cal.App. 677, 678 [286 P. 481]; see former §§ 1199.2 and 1200, now Civ. Code, §§ 3151 and 3152, respectively.) In the instant case Schrader was only entitled to a personal and deficiency judgment against Mustin.[6] The judgment in the instant case recites that the amount found owing is due Schrader "from defendants," and that if the proceeds from the foreclosure sale are insufficient to pay the amount found due to Schrader with interest, costs and expenses of sale, Schrader shall recover from the Lees, the Norwitts, and Mustin the amount of such deficiency. The same provisions are to be found in the trial court's conclusions of law. The imposition of a personal judgment and the authorization in the judgment for a deficiency judgment against the Lees and the Norwitts constitutes error. This error, however, does not require a reversal since it can be corrected by a modification of the judgment.

### Irregularities in Proceedings

The Lees and the Norwitts assert that the trial judge committed certain irregularities which prevented them from having a fair trial and that the trial court erred in not granting their motion for new trial on this basis pursuant to subdivision 1 of section 657 pertaining to grounds for a new trial. In *Develop-Amatic Engineering* v. *Republic Mortgage Co.,* 12 Cal. App.3d 143, 150-151 [91 Cal.Rptr 193], we recently observed as follows: "Included in the classification of irregularities within the purview of subdivision 1 of Code of Civil Procedure section 657 is an overt act of the judge which prevents the complaining party from having a fair and impartial trial. [Citation.] Such irregularity must be shown by affidavits presented in conjunction with a motion for new trial. [Citations.] On such motion the determination is made with reference to the course of conduct alleged to constitute an irregularity violative of a right to a fair and impartial trial and it is immaterial whether or not the irregularity resulted from bias or prejudice. [Citation.]"

The first ground upon which the motion for new trial on the ground of irregularity is based is the alleged prejudgment by the trial

---

[6]Mustin was a party defendant to the instant action, but is not a party to this appeal.

court in favor of plaintiff before the introduction of any evidence by either party. The declaration on behalf of the movants asserts that after hearing opening statements the trial judge stated that defendants did not have a defense, that he thought the title company should pay claims like this one, that he referred to title companies as the "Supreme Court of Montgomery Street," and that he used this expression several times in a manner indicating hostility to title companies. The counterdeclaration stated that the colloquy between court and counsel revolved around whether Schrader was required to give a prelien notice and that the trial judge stated "in effect" that although he was not prejudging the case he felt that there was no merit in the defense of lack of prelien notice to the buyer of the property.

Aside from the doubtful validity of the counterdeclaration in its attempt to characterize the "effect" of the judge's remarks, it is clear that the parties were discussing the requirement of a prelien notice in the context of section 1193, subdivision (a) and the relationship of the parties, and that the trial judge was merely expressing an opinion on a question of law and the interpretation of a statute, an interpretation which coincides with that made by this court. It is apparent that, although counsel for the Lees and the Norwitts had alluded to the factual question of estoppel in his opening statement, these facts were not detailed in the opening statement. The ensuing colloquy had particular reference to the interpretation of the statute and is understandable in view of the answer which did not plead an estoppel and the fact that estoppel was mentioned for the first time in defense counsel's opening statement.

The trial record discloses that the Lees and the Norwitts were permitted at the trial to present their defenses, both legal and factual, without any hindrance or restraint on the part of the court and they were permitted to present the facts they so desired on the issue of estoppel without any judicial curtailment.

The second basis of alleged irregularity is that the court exerted pressure upon the Lees and the Norwitts to settle the case in the amount demanded by Schrader. Upon inquiry as to whether the case could be settled, counsel for Schrader indicated a willingness to accept $4,000 in full settlement. The trial judge's statement that he thought it was a fair figure and that the settlement should be accepted was obviously made in the light of the court's belief that the defense based on the prelien notice was not a valid one. When the offer was unequivocally rejected the trial judge proceeded with the trial. The claim of coercion is clearly without substance. Under the state of the record we have nothing more than a sincere

effort on the part of the judge to settle a case which, as it then appeared to him, was one that called for a settlement. The trial judge's ultimate decision was one that he was obliged to render under the law and was not one that could be said to be the result of pique because the settlement had been rejected.

It is next claimed that the trial judge's conduct was irregular because he evinced a prejudice and hostility toward title companies. The allusions to title companies would better have been left unsaid. Such statements, however, did not prevent a fair trial. No title company was a party to the proceedings. The claim that the trial judge showed a strong interest in the title policy issued to the Lees on the subject property, particularly as to whether or not the policy covered the claim of lien in question, did not reflect prejudice against the Lees or the Norwitts. We apprehend, in view of the claim of estoppel, that the knowledge and conduct of the Lees were relevant to that issue, and that whether the title policy protected them against mechanics' liens was relevant to the issue of estoppel, as was the scope and extent of the title report on the property obtained by the Lees.

The next claim of irregularity is that the trial court demonstrated hostility toward the defense in connection with the testimony of the witness George Fung. In this regard all that is stated in defendants' declaration is that "Judge McCarty took over the examination of the witness concerning the purchase contract of the subject real property, before the witness had been permitted to testify concerning that matter on direct examination, and used leading questions to elicit confused testimony contrary to the face of the document." These statements are essentially conclusionary and are not evidentiary. We point out that a trial judge is entitled to question a witness in order to ascertain the truth and that it is not error for him to do so unless the party claiming error can point out such error, as well as its prejudicial effect.

It is asserted in the declaration that the trial judge expressed a doubt concerning the credibility of Chinese witnesses. This assertion finds its basis in the colloquy between the court and counsel at the time findings were being settled. When defense counsel asserted that it was apparent the witnesses Lee and Fung had not lied, the trial judge stated he did not know whether they were lying or not. The judge later related a previous experience where a Chinese witness who testified he did not understand English turned out to be a graduate of the University of California articulate in the English language. The court remarked, however, that he "shouldn't judge individuals by past experience." Although it would have been better to have left unsaid the remarks with respect to a previous

experience, it is apparent from the other remarks of the trial judge that he was not motivated by that experience in judging the credibility of Lee and Fung.

Finally, it is claimed that the trial judge exhibited his hostility and prejudice to these defendants because he summarily refused to grant the requests for specific findings. The trial judge indicated he had read the proposed findings and the objections thereto and that he was ready to approve the findings as submitted without argument. The trial judge was not required to hear argument on the findings but to consider the written objections and request for specific findings. This he did. ■■ While error might be predicated upon an improper denial of a specific finding, such denial is not an indication of prejudice or a deprivation of the right to a fair trial.

We perceive that the claim of error asserted as irregularities depriving the Lees and the Norwitts of a fair and impartial trial are essentially claims of bias and prejudice on the part of the trial judge. Each of the alleged incidents became known to these defendants at the time they occurred, yet no objection was interposed by them nor was any motion made to disqualify the trial judge at the earliest practicable opportunity after learning of the grounds therefor as required in a disqualification proceeding brought pursuant to section 170. (See *Develop-Amatic Engineering* v. *Republic Mortgage Co., supra,* 12 Cal.App.3d 143, 150.) The alleged bias or prejudice was urged for the first time in the motion for new trial—at a time subsequent to receiving an adverse judgment.

Under the state of the record which involves essentially questions of law and a minimum of facts which are in dispute, we are entitled to presume that the judgment rests on the strength of the trial court's resolutions of these questions upon the applicable legal principles rather than any remarks the court may have made in discussing these principles with counsel. ■■ We observe, moreover, that the granting or denial of a new trial is a matter which rests largely in the discretion of the trial court and will not be disturbed except on a manifest and unmistakable abuse of that discretion. (*McFarland* v. *Voorheis-Trindle Co.,* 52 Cal.2d 698, 707 [343 P.2d 923]; *Develop-Amatic Engineering* v. *Republic Mortgage Co., supra,* 12 Cal.App.3d 143, 151.) In the present case the burden which reposes upon the Lees and the Norwitts of showing that the court abused its discretion has not been sustained. (See *Yarrow* v. *State of California,* 53 Cal. 2d 427, 434 [2 Cal.Rptr. 137, 348 P.2d 687].)

The judgment is modified as follows: The word "defendants" is deleted

from paragraph 1 of the judgment and in lieu thereof is inserted the words "defendant Mustin Construction Company, a corporation," and the language in paragraph 3 which reads "that plaintiff recover from said defendants Wayne Lee and Tom T. Lee, his wife, E. A. Norwitt and Annabelle Norwitt, his wife, and Mustin Construction Company, Inc., the amount of such deficiency" is deleted and in lieu thereof is inserted the following: "that plaintiff recover from defendant Mustin Construction Company, Inc. the amount of such deficiency." As so modified the judgment is affirmed. Schrader shall recover its costs on appeal.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied July 26, 1972, and appellants' petition for a hearing by the Supreme Court was denied August 23, 1972.