Filed 3/11/14  Van Elk, Ltd. v. LB/L-DS Ventures Metropolitan II CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VAN ELK, LTD., | B244839 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC446369) |
| v. | |
| LB/L-DS VENTURES METROPOLITAN II, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert O'Brien, Judge.  As modified, affirmed.

Pumilia Patel & Adamec, Jayesh Patel and Justene M. Adamec for Defendants and Appellants.

O'Rourke, Fong & Manoukian, Marina Manoukian for Plaintiff and Respondent.

———————————————

International Fidelity Insurance Co. and LB/L-DS Ventures Metropolitan II, LLC, appeal from the judgment that allowed Van Elk, Ltd., to recover on a mechanic's lien release bond and on a common count for construction work it performed. We affirm.

## FACTS AND PROCEDURAL HISTORY

Sometime in 2008 Van Elk, Ltd., was hired to perform structural steel and other steel work as part of the redevelopment of a commercial property complex in Hollywood. Van Elk had a direct contract with property owner LB/L-DS Ventures Metropolitan II (Met II) to perform steel work totaling more than $60,000 in the parking area between buildings (the Direct Contract). Van Elk had a subcontract for more than $300,000 of structural steel work on office buildings with E&R Construction, which was Met II's general contractor for that part of the construction project (the Subcontract).

GE Finance was Met II's construction lender. When one of the loan's guarantors went bankrupt in September 2008, GE declared a default. Met II disputed the default and over the next several months negotiated with GE about resuming funding, but GE never funded any more construction work. After Met II stopped paying, E&R stopped work in January 2009, filed a mechanic's lien in February 2009, and on April 10, 2009, notified its subcontractors that it was stopping work.

E&R then sued Met II, which cross complained against GE. Several mechanics's liens actions by E&R subcontractors were consolidated with that case. The trial court in that action appointed a receiver to take charge of the property in January 2010, and the property was eventually sold to another entity in 2011. In order to allow that sale to go through, the new owner was required to post mechanic's lien release bonds.

Van Elk did not immediately file a mechanic's lien or take part in the Met II/GE litigation. Instead, it continued to perform the work it had been hired to do under both the Direct Contract with Met II and the Subcontract with E&R. According to company president Emil Vassilev, Van Elk did so at the urging of Met II project manager Mitch Canada, who was authorized to act for and bind Met II. It is undisputed that Met II and the receiver never filed a notice of nonresponsibility for any work performed on the

2

property (Civ. Code, § 3094). There is disputed evidence that Van Elk was never informed that the property was in receivership.

Eventually Van Elk stopped work on the project and on July 23, 2010, filed mechanic's liens for work done on both the Direct Contract and the Subcontract. In order to recover the money it was owed, Van Elk sued International Fidelity Insurance Company (the bonding company), which had issued the mechanic's lien release bonds. Van Elk also sued Met II on a common count theory. The trial court found for Met II and the bonding company for work done under the Direct Contract because it believed Van Elk and Canada conspired to submit false invoices in order to secure payment from the lender. However, the trial court found for Van Elk in regard to the Subcontract work because it filed its mechanic's lien within the statutory time limits and because Canada asked Van Elk to keep working on the project after the lender pulled out.

Met II and the bonding company appeal from the judgment.[1] They contend: (1) the judgment must be reversed because it awards a double recovery under both the mechanic's lien release bond and common count claims; (2) the undisputed evidence shows that Van Elk's mechanic's lien was not filed within 90 days after Van Elk stopped work on the project in light of work interruptions greater than 60 days; (3) Van Elk was unauthorized to perform work once the receiver was appointed; (4) Canada had no agency authority to bind the receiver; (5) under theories of election of remedies or estoppel, Van Elk's pursuit of the mechanic's lien prevented it from proceeding on a common count theory; and (7) the statement of decision was internally inconsistent by denying Van Elk's claims on the separate direct contract due to fraud.[2]

---

[1]    We will sometimes refer to Met II and the bonding company collectively as appellants.

[2]    Van Elk did not cross-appeal from the portion of the judgment finding for appellants on the Direct Contract claims. However, evidence related to those claims is relevant to some of the issues on appeal.

**STANDARD OF REVIEW**

Because we conclude that there are disputed fact issues concerning the timeliness of Van Elk's mechanic lien, the substantial evidence rule applies. (See *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 286; *Nevada County Lumber Co. v. Janiss* (1938) 25 Cal.App.2d 579, 582-583.) Under that standard, we resolve all conflicts in favor of the prevailing party and we indulge in all legitimate and reasonable inferences to uphold the judgment if possible. (*Chin v. Namvar* (2008) 166 Cal.App.4th 994, 998, fn. 4.) Our power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the judgment. When two or more reasonable inferences can be drawn from the facts, we cannot substitute one we might prefer for those the trial court drew. (*Ibid.*) Appellants agree that this standard of review applies to the common count cause of action.

To the extent issues of law are raised, we exercise independent review. (*Los Angeles County Prof. Peace Officers' Assn. v. County of Los Angeles* (2004) 115 Cal.App.4th 866, 869.)

**DISCUSSION**

1.      *There Is Substantial Evidence That Van Elk's Mechanic's Lien Was Timely*

A mechanic's lien is a claim against real property upon which someone has performed work or furnished materials. (*Shady Tree Farms, LLC v. Omni Financial, LLC* (2012) 206 Cal.App.4th 131, 135 (*Shady Tree Farms*).) The mechanics' lien law is mandated by the California Constitution. (*Ibid.*) As a result, it is considered remedial legislation that must be liberally construed for the protection of laborers and materialmen. (*Ibid.*)

A mechanic's lien is perfected by filing a claim of lien within certain time limitations and by meeting other statutory requirements. (*Shady Tree Farms, supra,* 206 Cal.App.4th at p. 135.) A lien is not recorded until after work is completed. (*Id.* at

4

p. 136, citing Civ. Code, §§ 3115, 3116.)[3] In addition to an actual cessation of labor, work is deemed completed if labor has stopped for more than 60 continuous days. (§ 3086, subd. (c).) A mechanic's lien must be filed within 90 days after work is complete. (§ 3116.)

Van Elk contended that it continued working on the Subcontract through June 23, 2010, without interruptions greater than 60 days, making its July 2010 mechanic's lien timely. This was supported by numerous inspection reports prepared by independent inspectors who came to the worksite to check on the work being performed by Van Elk. The last such report was dated June 23, 2010, and the two inspectors testified that they were present at the worksite watching Van Elk work on each occasion for which they filed a report.[4]

Appellants contend this evidence was overcome as a matter of law by the following: Van Elk filed a claim in E&R's bankruptcy case that included a final invoice dated January 10, 2010; Van Elk's mechanic's lien sought interest from that same date; the trial court awarded prejudgment interest from January 10, 2010, further indicating a finding that work ended at that time; and there were gaps of more than 60 days between inspection reports from February 2009 through January 2010.

This was contradicted by Vassilev, who testified that the January 10, 2010, date for the accrual of interest was not meant to reflect when work was completed. Instead, he chose that date as a means of "backdating" interest because he had not been paid for so long. As for using that date for the final invoice in the E&R bankruptcy case, Vassilev

---

[3] Effective July 1, 2012, the mechanic's lien law was repealed and replaced by Civil Code sections 8000-9566. The parties agree that the prior version of the law controls this case. All further undesignated section references are to the former Civil Code sections governing the mechanic's lien laws.

[4] Although technically denominated as an action to enforce a mechanic's lien release bond under section 3143, that action is one and the same as an action to foreclose the underlying mechanic's lien, and the bond does not change the relations or rights of the parties. (*Royster Construction Co. v. Urban West Communities* (1995) 40 Cal.App.4th 1158, 1166.)

5

attributed it to sloppiness on his part, stating that he simply forgot to update the document. Finally, Vassilev testified that in between inspections Van Elk performed work that did not require inspections.

The trial court was entitled to believe the testimony of the inspectors that they witnessed work going on through June 23, 2010. If the trial court believed that, then it could also accept Vassilev's explanation that he inadvertently and incorrectly used the January 23 date in certain documents, and that his use of that date did not reflect when work actually stopped. Nor do we see any reason why the trial court could not find credible Vassilev's testimony that other work was performed in-between inspections. As a result, there was sufficient evidence to support the trial court's finding that work did not stop until June 23, 2010, making the mechanic's lien timely.

As for the trial court's award of prejudgment interest from January 10, 2010, Van Elk was entitled to an award of prejudgment interest on both the mechanic's lien claim and the common count. (*Forsgren Associates, Inc. v. Pacific Golf Community Development LLC* (2010) 182 Cal.App.4th 135, 158-159 (*Forsgren*).) Interest accrues from the date an obligation became due. (*Ibid.*) Because Van Elk submitted periodic progress payments that were never contested, those sums were calculable and certain, permitting interest to accrue from the date each payment was owed. (See *Macomber v. State* (1967) 250 Cal.App.2d 391, 400-401.)

Based on this, the trial court might have accepted Vassilev's selection of January 10, 2010, as an acceptable compromise for the date of prejudgment interest, which benefitted appellants by delaying the accrual of interest for progress payments due before that date.[5] Such a finding does not undermine the trial court's determination that work stopped less than 90 days before Van Elk filed its mechanic's lien.

---

[5] The trial court's tentative statement of decision and proposed statement of decision did not mention prejudgment interest, and appellants did not object to that omission. They also did not object to the proposed judgment, which did include the prejudgment interest calculation. We therefore deem waived any deficiencies in that regard. (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380; Cal. Rules of Court, rule 3.1590(j).)

2.    *Appointment of the Receiver Does Not Preclude Recovery*

Appellants contend that appointment of the receiver in January 2010 cut off Van Elk's right to deal with Canada and Met II, making Van Elk's reliance on Canada's pleas to keep working ineffective to enforce the mechanic's lien through the new owner's release bond.  They cite one decision for this proposition:  *San Francisco Paving Co. v. Fairfield* (1901) 134 Cal. 220 (*Fairfield*).

*Fairfield* held that the executor of an estate could not make a contract for work on property belonging to the estate that would give rise to a mechanic's lien unless the probate court approved the contract in advance.  (*Fairfield, supra,* 134 Cal. at p. 224.) Analogizing from this, appellants contend that Van Elk was not permitted to work on the property once the receiver was appointed because the court did not give the receiver the authority to contract for the work and because the receiver never agreed to the work.  The analogy fails.

At issue here is not whether the receiver was empowered to authorize Van Elk to keep working on the project.  Instead, the issue is whether Van Elk can enforce its mechanic's lien rights against the property because Canada asked Van Elk to keep working on the property after the receiver was appointed.

We begin with Vassilev's testimony that Van Elk was never notified that a receiver had been appointed.  This is corroborated by the order appointing the receiver, which does not include a proof of service.  Although Vassilev recalled interacting with a woman named Marta who was in fact the receiver's property manager, Vassilev believed she worked for Met II.  Reports from the receiver show that Marta did not begin work until May 1, 2010, meaning she was on the premises only the last six weeks that Van Elk continued working.  It is also undisputed that Met II and the receiver never filed a statutory notice of nonresponsibility for work performed.  Canada testified that he was the project manager's head person on-site and admitted that he was authorized to act for Met II.

7

In short, there is substantial evidence that Van Elk did not know a receiver had been appointed and believed Met II had authorized him to continue working on the project. Furthermore, despite testimony that the receiver was unaware that Van Elk was still working on the project, we believe the trial court was free to disregard that evidence given the probable noise and activity levels that would arise from structural steel work, along with Vassilev's testimony that he had contact with Marta, who, unbeknownst to him, was in fact the property manager for the receiver.

Although a mechanic's lien may be recorded after work is completed, the lien relates back to the date the first labor or material was furnished at the property, and transferees who take an interest in the property before the lien is recorded still take subject to the lien. (*Forsgren, supra,* 182 Cal.App.4th at p. 146.) A mechanic's lien cannot be defeated or otherwise affected by a transfer of the property after the lien attaches. (*Id.* at p. 147.)

This principle was applied in *Schrader Iron Works, Inc. v. Lee* (1972) 26 Cal.App.3d 621 (*Schrader*), where a structural steel company was allowed to foreclose its mechanic's lien against the former owners even though the current owners bought the land after the lien attached. The steel company was not required to give the new owner a pre-lien notice because there was evidence that the new owner knew about the construction and was aware that mechanic's liens could attach to the property. (*Id.* at p. 631.)

Moreover, the mechanic's lien law does not require claimants furnishing labor or material under a contract with the property owner "to make inquiry or to search the title record to ascertain whether the owner with whom they contracted made a conveyance of the property." (*Schrader, supra,* 26 Cal.App.3d at p. 631.) Otherwise, the contractor would have "to make a day-to-day ascertainment whether there was a new owner of the property. We think it more reasonable to place the burden on the purchaser in view of the objectives and purposes of the mechanics' lien law." (*Ibid.*)

*Schrader* is not a precise fit with the facts of this case. Here, the property had not been conveyed to a new owner during the relevant time period of January through June

8

2010. Instead, it was placed by court order in the control of a receiver pending the outcome of the MetII/GE/E&R litigation. As appellants point out, the receiver holds assets for the court, not for the parties. (Cal. Rules of Court, rule 3.1179(a)(3).)

However, the receiver here, like the subsequent buyer in *Schrader,* must have known that there were other prospective lien claimants apart from those who joined the MetII/GE/E&R litigation. And as noted, there is evidence that the receiver in fact knew Van Elk was still working on the property. On the other hand, the evidence supports a finding that Van Elk had no knowledge the property was in the hands of a receiver. Instead, it was still performing work at the urging of Canada, who was the agent for Met II.

These facts suggest that Met II, through Canada, failed to inform Van Elk that a receiver had been appointed and instead encouraged Van Elk to continue working on the project after that time. Given that a mechanic's lien relates back to the first time work was performed and cannot be cut off by a subsequent conveyance of the property, we conclude it was proper to enforce the mechanic's lien through the release bond.

3. *Van Elk Could Pursue Remedies Other Than Its Mechanic's Lien*

Appellants make two interrelated arguments concerning Van Elk's common count cause of action against Met II and its bankruptcy claim against E&R: that the judgment on both the mechanic's lien bond and the common count claims awarded Van Elk a double recovery; and that the common count cause of action was barred under the doctrine of election of remedies or by estoppel.

Appellants cite no authority for this proposition, and the law is to the contrary. Section 3152 provides that the mechanic's lien statutes do not prevent a claimant from obtaining and enforcing a judgment against those personally liable for the debt in either an action on the lien or in a separate action, so long as any money collected in a personal judgment is credited against the lien. (*Paykar Construction Inc. v. Spilat Construction Corp.* (2001) 92 Cal.App.4th 488, 494-495 [common count could be pursued as a separate action after bringing successful action to foreclose mechanic's lien]; *Culbertson*

9

*v. Cizek* (1964) 225 Cal.App.2d 451, 468 [mechanic's lien law is not exclusive remedy and judgment may be pursued simultaneously against those personally liable so long as sums collected are credited toward the lien].)

Therefore, any amounts Van Elk recovers from Met II on the common count claim must be credited against the lien release bond, and we have no doubt that appellants will raise the issue should Van Elk attempt to enforce the judgment in a manner that would constitute a double recovery. We see no reason why the same rule does not apply to Van Elk's pursuit of E&R through the federal bankruptcy court. However, the judgment should be modified to account for any such offsets, and we shall do so in our Disposition.

4.     *The Statement of Decision Was Not Inconsistent*

Appellants contend the judgment is internally inconsistent because the trial court found against Van Elk on its Direct Contract claims due to its falsified invoices for that project. According to appellants, the trial court should have therefore found that the invoices submitted in support of the Subcontract claims were equally fraudulent. Specifically, they contend the trial court uncritically rejected the documentary evidence that work was completed on January 10, 2010, when the invoices from that date do not differ materially from the work claimed to have taken place over the next few months.

First, appellants did not object to the statement of decision on that basis, leading us to infer all findings in support of the judgment that are supported by substantial evidence. (*County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 67, fn. 6.) Second, appellants' argument on this point does not specify these similarities or where in the record they might be found, leading us to deem the issue waived. (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218; *EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775.) Finally, as set forth in section 1. of our Discussion, there was sufficient evidence that the January 10, 2010, date was simply an error or oversight by Vassilev, especially given the testimony of the two independent inspectors who observed Van Elk performing work on the project after that time.

10

## DISPOSITION

As Van Elk concedes, it is not entitled to a double recovery. Accordingly, the judgment is modified to state that any sums recovered by Van Elk through the E&R bankruptcy proceedings that are duplicative of the judgment on the Subcontract in this case are to be offset against any attempts to enforce the judgment in this action. Similarly, the judgment is modified to state that any attempt to enforce the judgment against International Fidelity must be offset by any recovery against Met II on the common count cause of action, and that any attempt to enforce the judgment against Met II must be offset by any recovery against International Fidelity on the mechanic's lien release bond. In all other respects the judgment is affirmed. Respondent Van Elk shall recover its appellate costs.

                                                    RUBIN, ACT. P. J.

WE CONCUR:


            GRIMES, J.


            KUSSMAN, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11