[Civ. No. 46288. First Dist., Div. Four. Apr. 17, 1980.]

ROMAK IRON WORKS, Plaintiff and Appellant, v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA,
Defendant and Respondent.

COUNSEL

Chandler & Bruner and Stephen M. Chandler for Plaintiff and Appellant.

Julian E. Hultgren, Edward S. Rusky, John H. Bickel, Mary Beth Uitti, Landels, Ripley & Diamond, John R. Hetland and Anthony G. Wilson for Defendant and Respondent.

OPINION

**RATTIGAN, J.**—This appeal involves provisions of the Civil Code which establish that a subcontractor on a private construction project who (1) gives a "preliminary 20-day notice" to a "construction lender" financing the project, and who (2) gives a "stop notice" to the lender thereafter, may (3) recover the subcontract price in an action brought

against the lender to enforce the stop notice.[1] This appeal is from a summary judgment dismissing such action on the ground that the plaintiff subcontractor had not given the defendant lender a preliminary 20-day notice in time to make it effective for any purpose. The question is whether its timing is fatal to the action in light of other circumstances shown on the motion for summary judgment.

## FACTS

The record and the briefs support the following recital of facts which are not in dispute: On and before May 24, 1972, record title to certain real property in San Francisco was held by MacDonald, Nelson & Heck, Inc., a corporation (hereinafter MacDonald), Marwin Garage Corporation (Marwin), and one Lucien Sabella. They had negotiated a loan from respondent Prudential Insurance Company of America (Prudential) to finance the construction of a commercial garage on the property by MacDonald as the general contractor.

The construction loan was evidenced by a promissory note which the borrowers executed and delivered to Prudential in the principal amount of $1.15 million. They also executed a deed of trust on the property in favor of Prudential as the beneficiary, to secure payment of the note. This instrument was captioned "Construction Trust Deed." Prudential recorded. it in the office of the Recorder for the City and County of San Francisco on May 24, 1972.[2]

On June 1, 1972, appellant Romak Iron Works, a corporation (Romak), entered into a written subcontract with MacDonald in which it (Romak) agreed to furnish certain labor and materials in the construction project for a subcontract price of $26,574. The subcontract identified Romak as "Subcontractor," MacDonald and Marwin as "Owner" of the project, and MacDonald as "Contractor."

---

[1] Except where otherwise indicated, statutory references are to the provisions of the Civil Code as they read at times pertinent to this action. They then appeared in division third, part 4, title 15 (Works of Improvement, hereinafter title 15), chapter 3 (Stop Notices for Private Works of Improvement, commencing with § 3156). They also incorporated definitions appearing in chapter 1 of title 15 (General Definitions, commencing with § 3082).

[2] The "Construction Trust Deed" made Prudential a "construction lender" within the meaning of section 3087, which provides in pertinent part: "'Construction lender' means any...beneficiary under a deed of trust lending funds with which the cost of the work of improvement is, wholly or in part, to be defrayed...."

On June 20, 1972, Romak mailed a "Preliminary Notice" to Mac-Donald at the latter's address in Oakland. The document consisted of a single page on which Romak gave notice that it "has furnished or will furnish" specified "labor, services equipment [*sic*] or materials" in the San Francisco construction project, under contract with MacDonald, for an "estimate[d]...total price" of $26,574. In a space on the notice entitled "OWNER or Reputed Owner," Romak named MacDonald and Marwin. In a space entitled "ORIGINAL CONTRACTOR or Reputed Contractor, if any," it identified MacDonald by name and address. In a space entitled "CONSTRUCTION LENDER or Reputed Construction Lender, if any," Romak wrote "Not Known." Prudential was not identified in the notice, which was not delivered or sent to it on June 20, 1972.[3]

Romak furnished the subcontracted labor and materials for the project from September 12, 1973, to November 27, 1973. On the latter date, a total of $40,186.63 was due it by reason of the subcontract's terms and the work actually done.

On January 18, 1974, Romak delivered to Prudential a "Stop Notice" in which it described the work done and demanded payment of $40,186.63. Prudential was informed in this notice, among other things, that Romak "claims the benefit of the law given [*sic*] to laborers and materialmen under and by virtue of...[title 15]...and prays that you withhold funds to satisfy this claim."

Romak performed additional work on the construction project from May 28 to May 31, 1974.

## THE ACTION

Romak commenced the present action, against Prudential and others, at a subsequent time not shown in the record. The pertinent procedural

---

[3]The format of the notice made it a "preliminary 20-day notice (private work)" within the meaning of section 3097 as it defined that term in 1972. Romak's failure to give it to Prudential, the "construction lender" on the project (see fn. 2, *ante*) invoked the following language of section 3097 which still appears in it: "(b) Except the contractor, or one performing actual labor for wages, or an express trust fund described in Section 3111, all persons who have a direct contract with the owner and who furnish labor, service, equipment, or material for which a lien otherwise can be claimed under this title [i.e., title 15], or for which a notice to withhold can otherwise be given under this title, *must*, as a necessary prerequisite to the validity of any claim of lien, and of a notice to withhold, cause to be given *to the construction lender, if any, or to the reputed construction lender, if any*, a written preliminary notice as prescribed by this section." (Italics added.)

sequence commenced when Romak filed an amended complaint in five counts. The second count pleaded a cause of action against Prudential for the recovery of $32,273.30 pursuant to the stop notice delivered by Romak in January of 1974.[4] Prudential's general demurrer to the second count was overruled. It thereupon moved for summary judgment dismissing that count, pursuant to Code of Civil Procedure section 437c, on the factual ground that Romak had not given it a preliminary 20-day notice in compliance with section 3097, subdivision (b). (See fn. 3, *ante*.)

Prudential showed on its motion, among other things, that it had recorded the "Construction Trust Deed" in San Francisco on May 24, 1972. Romak filed a declaration by Robert A. McElvain, its office manager, in opposition to the motion. McElvain attached a copy of the notice sent to MacDonald (see the text at fn. 3, *ante*), and declared that it had been "mailed by me on June 20, 1972." He referred to it as the "'lender's copy,'" but stated that "[a]t the time, however, I knew of no construction lender on the job." He also declared in pertinent part as follows: "Prior to sending the notice, I made inquiries with Mac-Donald. . . . I believe that I spoke with Ralph Jago, controller for Mac-Donald. . . . He told me that it was then unknown whether there would be a construction lender. We had dealt with MacDonald. . . for years and never expected to be misinformed. To my knowledge, no one at Romak. . . knew of the existence of a construction lender on the job before January 7, 1974. . . . On January 7, 1974, I had a conversation with another subcontractor. . . and was informed for the first time that Prudential was the lender. I immediately called Mr. Sweaney of Prudential. On that day I sent a copy of the preliminary notice to him at Prudential's San Francisco office."

The trial court filed a memorandum decision granting Prudential's motion. It thereupon entered a summary judgment dismissing the second count of Romak's amended complaint. This appeal by Romak followed.

[4]Romak alleged in the second count that the $40,186.63 originally due it had been reduced to $32,273.30 by a partial payment of $7,913.33 which was not identified by date or source. It also states in its opening brief as follows: "Subsequently, MacDonald . . .was adjudicated a bankrupt and Prudential foreclosed on its construction deed of trust, thereby rendering all mechanics' liens of no value since the deed of trust was recorded first. The only cause of action left was the claim of appellant [Romak] to enforce the stop notice against Prudential. It is this cause of action which was the subject of the summary judgment and this appeal." Prudential has not disputed this statement, which establishes that the other causes of action pleaded in Romak's amended complaint are to be disregarded.

REVIEW

Romak concedes that its stop notice claim against Prudential is barred if it did not comply with the preliminary 20-day notice requirement prescribed in section 3097, subdivision (b). (See fn. 3, *ante.*) It nevertheless contends that it effectively complied with the requirement when it mailed its preliminary 20-day notice to MacDonald on June 20, 1972. This contention is based on the alternative arguments captioned below. It must be rejected for the reasons respectively stated.

### *Knowledge of Prudential's Identity*

Romak argues in effect that its compliance with the preliminary 20-day notice requirement was *excused* at all times prior to January 7, 1974, as to Prudential, because until then it (Romak) had neither actual nor constructive knowledge that Prudential was a "construction lender" on the project. This argument fails in light of the plain language of the pertinent subdivisions of section 3097 as they read in 1972.

Subdivision (b) imposed on Romak an absolute obligation ("must") to give a preliminary 20-day notice to Prudential "as a necessary prerequisite to the validity" of any stop notice given it later. (See fn. 3, *ante.*) The unqualified language of subdivision (b) made no exception for the event that Romak had no actual knowledge that Prudential was a "construction lender" on the project before the stop notice was delivered to it. That event was covered by subdivision (f), which provided that a subcontractor or other claimant could give a preliminary 20-day notice to any "'construction lender'...not known" by mailing it to the "jobsite" addressed to "'construction lender'" only.[5] Prudential made a showing on its motion which supported the inference that Romak had not done that at any time, and Romak effectively admitted as much. The trial court was accordingly correct in granting Prudential's motion as to "jobsite" notice, on which there was no triable issue of fact. (Code Civ. Proc., § 437c.)

---

[5]Subdivision (f) provided in 1972 as follows: "(f) Service of [the preliminary 20-day] notice required under this section [i.e., by section 3097] may be given by delivering the same to the person to be notified, personally, or by leaving it at his address or place of business with some person in charge, or by first-class mail, registered mail, or certified mail, postage prepaid, addressed to the person to whom notice is to be given at his residence or place of business address, at the address shown by the building permit on file with the authority issuing a building permit for the work, or at an address recorded

Subdivision (f) further provided an array of alternative methods by which Romak might have given an effective preliminary 20-day notice to a construction lender on the project. One method was by mail "at the address shown by the building permit on file with the authority issuing a building permit for the work," another by mail "at an address recorded pursuant to subdivision (j)" of section 3097. (See fn. 5, *ante.*)

The passage mentioning the "building permit" as the source of an address indirectly referred to subdivision (i) of section 3097, which required an authority issuing a building permit to provide on its permit application form a space "for the applicant to enter the name...and address of the construction lender" and to "keep the information... open for public inspection." Subdivision (j) of the section, which was explicitly cited in subdivision (f), required that an instrument securing a loan by a construction lender be entitled "Construction Trust Deed"; that it state the lender's "name and address"; and that the county recorder with whom it was recorded "shall" index it to "indicate" that it secured a "construction loan." Despite the mandatory language of these requirements, however, both subdivisions expressly provided that no deviation from them operated to "relieve" any person from the "obligation" (or "duty") to give a preliminary 20-day notice as required by section 3097.[6]

pursuant to subdivision (j) of this section. If the address of the person on whom notice was required to be served is not actually known, then service of such notice may be by first-class mail, registered mail, or certified mail, addressed to the jobsite, with the envelope setting forth the name of the owner or reputed owner, if known, or if not known, then merely 'owner' or to the person to whom a notice to withhold may be given, if known, or if not known, then to 'construction lender' or to the original contractor, if known, or if not known, then to 'general contractor.' When service is by registered or certified mail, service is complete at the time of the deposit of the registered or certified mail."

It should be noted that this confusing language has been replaced by the simplified version of subdivision (f) which is presently in effect. (Stats. 1976, ch. 396, § 1, pp. 1046-1047.)

[6]Subdivisions (i) and (j) respectively read in 1972 as follows: "(i) Every city, county, city and county, or other governmental authority issuing building permits shall, in its application form for a building permit, provide space and a designation for the applicant to enter the name, branch designation, if any, and address of the construction lender and shall keep the information on file open for public inspection during the regular business hours of the authority. [¶] If there is no known construction lender, that fact shall be noted in such designated space. Any *failure to indicate the name and address of the construction lender* on such application, however, *shall not relieve* any person from the *obligation to give to the construction lender the notice* required by this section [i.e., by section 3097].

"(j) A mortgage, deed of trust, or other instrument securing a loan, any of the proceeds of which may be used for the purpose of constructing improvements on real

The unmistakable thrust of subdivisions (i) and (j) is to impose on a prospective stop notice claimant the duty to examine either or both of the alternative sources of information they mention (the building permit and the specially indexed official records of the county) for the purpose of ascertaining the existence and identity of a "construction lender" to whom he must deliver a preliminary 20-day notice "as a necessary prerequisite to the validity" of a stop notice to be delivered later. (§ 3097, subd. (b).) If he fails to examine the two sources, subdivisions (i) and (j) operate to charge him with constructive notice of the information recorded in either.

Romak states in its opening brief that Prudential was not identified as a construction lender on the building permit issued for the San Francisco construction project. The only record source it cites for this statement is an allegation in its amended complaint. ■ That allegation will not support the statement because a party may not rely on his own pleading as a factual source on a motion for summary judgment. (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 596 [125 Cal.Rptr. 557, 542 P.2d 981].) It nevertheless appears that the omission asserted was conceded by Prudential in the trial court.

There was no such omission from the "Construction Trust Deed," which clearly identified Prudential as a construction lender on the project; stated Prudential's San Francisco address; showed on its face, as recorded, that it had been specially indexed in compliance with subdivision (j) of section 3097; and otherwise comported with that statute in all respects. It thus conveyed the crucial information even if the building permit did not. Romak was consequently placed on constructive notice that Prudential was a "construction lender" on the project, and of its address, when and after the instrument was recorded on May 24, 1972.

property, shall bear the designation 'Construction Trust Deed' prominently on its face and shall state all of the following: (1) the name and address of the lender, and the name and address of the owner of the real property described in the instrument, and (2) a legal description of the real property which secures the loan and, if known, the street address of the property. The failure to be so designated or to state any of the information required by this subdivision shall not affect the validity of any such mortgage, deed of trust, or other instrument. [¶] *Failure to provide such information on such an instrument* when recorded *shall not relieve* persons required to give preliminary notice under this section from such duty. [¶] The county recorder of the county in which such instrument is recorded shall indicate in the general index of the official records of the county that such instrument secures a construction loan." (Italics added.)

Disputing this conclusion, Romak cites Civil Code section 1213 for the proposition that a recorded "conveyance of real property" gives "constructive notice" of its contents to "subsequent purchasers and mortgagees" only;[7] points out that it (Romak) is neither, and asserts no interest in the affected property, because it is a stop notice claimant seeking the recovery of money only; and argues that, because title 15 includes no provision "which imposes constructive notice on anyone for any purpose other than upon persons claiming an interest in the real property," it (Romak) "should not be burdened with the fiction of constructive notice" of the contents of Prudential's "Construction Trust Deed." The argument overlooks the provisions of subdivisions (i) and (j), of section 3097, which express the intent of the Legislature to apply the "fiction of constructive notice," to prospective stop notice claimants, because they implement its translation into actual knowledge to be ascertained by reasonable inquiry of reliable sources. ■ The argument thus fails because it ignores the precept that all parts of an applicable statutory scheme must be construed "as a whole," to the end that none is "useless or deprived of meaning." (*Weber* v. *County of Santa Barbara* (1940) 15 Cal.2d 82, 86 [98 P.2d 492] [quoted and applied in *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478 (156 Cal.Rptr. 14, 595 P.2d 592)].)

■ Romak might have provided against actual ignorance of Prudential's role by employing the fail-safe device of mailing a preliminary 20-day notice to the jobsite, in an envelope addressed to "construction lender" only, as provided and permitted by subdivision (f) of section 3097. (See fn. 5, *ante.*) Not having done this, it is charged with constructive notice of Prudential's identity as a "construction lender," and of its address, as imparted by the available and reliable record source Romak did not bother to consult. Romak's actual ignorance of these facts consequently cannot excuse its failure to give Prudential a preliminary 20-day notice pursuant to subdivision (f).

### The Effect of the Preliminary
### 20-day Notice Given MacDonald

■ Romak also contends that it *complied* with the preliminary 20-day notice requirement, as to Prudential, when it mailed the notice

---

[7]This statute reads in pertinent part as follows: "1213. Every conveyance of real property acknowledged or proved and certified and recorded as prescribed by law from the time it is filed with the recorder for record is constructive notice of the contents thereof to subsequent purchasers and mortgagees...."

to MacDonald on June 20, 1972. This argument rests on the premises that Prudential was then the "construction lender," that MacDonald was the "original contractor," and that the quoted terms were equated and made interchangeable by a single disjunctive passage which appeared in the second sentence of subdivision (f) of section 3097 as it read at the time.[8] The argument fails because the third premise does.

Romak's literal interpretation of the disjunctive passage is permitted by the utterly garbled language of the sentence as it read in 1972 (see fn. 5, *ante*), but whether the passage applies at all depends upon a reading of the entire sentence. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.*, *supra*, 24 Cal.3d 458 at p. 478.) A close examination of the full context establishes that the sentence applied where a prospective stop notice claimant did not "actually" know the "address" of a person entitled to a preliminary 20-day notice, *and* the name of a "construction lender" was "not known" to him, in which events he could effectively give the notice in an envelope designating "construction lender" (*or* designating the "original contractor" by name, according to Romak's view), but only *if* the envelope were sent by "mail, addressed to the jobsite," and not otherwise.

An interpretation of the passage cited by Romak might accordingly be relevant if the latter had undertaken to give a preliminary 20-day notice to *anyone* by "mail, addressed to the jobsite." It not having done that (as we have seen), the passage is irrelevant because no part of the sentence applied.

### General Statutory Interpretation

Romak quotes at length from *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 826-827 [132 Cal.Rptr. 477, 553 P.2d 637], in support of the additional argument that the stop notice statutes are to be liberally construed in favor of those persons in the construc-

[8]The single passage is emphasized in the following requotation of the full sentence (see fn. 5, *ante*): "If the address of the person on whom [a preliminary 20-day] notice was required to be served is not actually known, then service of such notice may be by ...mail, addressed to the jobsite, with the envelope setting forth the name of the owner or reputed owner, if known, or if not known, then merely 'owner' or to the person to whom a...[stop notice]...may be given, if known, or if not known, then *to 'construction lender' or to the original contractor, if known,* or if not known, then to 'general contractor.'"

tion industry whom they were designed to protect. ■ It is true that the Legislature intended the statutes to protect subcontractors and others (*id.*, at pp. 825-827), but it imposed the notice requirements for the concurrently valid purpose of alerting owners and lenders to the fact that the property or funds involved might be subject to claims arising from contracts to which they were not parties and would otherwise have no knowledge. (Cf. *Schrader Iron Works, Inc.* v. *Lee* (1972) 26 Cal. App.3d 621, 630 [103 Cal.Rptr. 106]; *Windsor Mills* v. *Richard B. Smith, Inc.* (1969) 272 Cal.App.2d 336, 340 [77 Cal.Rptr. 300].)

Moreover, the *Connolly* court cited the preliminary notice requirement as a safeguard which validated the statutes against a contention that they operated to deprive affected landowners of due process of law. (*Connolly Development, Inc.* v. *Superior Court, supra*, 17 Cal.3d 803 at pp. 820, 822. See also *id.*, at pp. 806, 813-814, 826-828.) The rule requiring their liberal construction may not be applied to frustrate the Legislature's manifested intent to exact strict compliance with the preliminary notice requirement. There was no semblance of such compliance here.

### The Timing of the Notices
### Actually Given Prudential

Romak has not explicitly addressed this point, but we reiterate the pertinent time sequence by way of concluding our review. It was shown on the motion for summary judgment that Romak performed subcontracted work on the project from September 12 to November 27, 1973; that it actually gave Prudential a preliminary 20-day notice on or about—but not until—January 7, 1974; that it gave Prudential a stop notice on or about January 18, 1974; and that it performed additional work on the project from May 28 to May 31, 1974.

The January 7 notice did not reach any of Romak's 1973 work because none of that work had been performed within the preceding 20 days. (§ 3097, subd. (c).) For purposes of Romak's action, neither notice reached the work it performed in May of 1974 because the action is for the recovery of money on the stop notice given to Prudential on or about January 18, 1974. A stop notice "may *only* be given for materials, equipment, or services *furnished*, or labor *performed*." (§ 3159 [italics added].)

No triable issue of fact survived Prudential's motion as to any of the points discussed above. The summary judgment must accordingly stand. (Code Civ. Proc., § 437c.)

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.