[Civ. No. 24625. Third Dist. Aug. 29, 1986.]

KODIAK INDUSTRIES, INC., Plaintiff and Appellant, v.
JOHN P. ELLIS et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

†Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions is
directed to publish all portions of this opinion except part II.

**COUNSEL**

Kenward, Coats & Chandler and Robert T. Coats for Plaintiff and Appellant.

James L. Stoelker and Donald E. Huckins for Defendants and Respondents.

**OPINION**

**SPARKS, J.—** ██ Under the Mechanics' Lien Law (Civ. Code, § 3082 et seq.) a claimant who has a direct contract with the owner is required, as a prerequisite to the validity of any claim of lien, to give a preliminary notice to the construction lender or reputed construction lender that a mechanic's lien may be placed against the property. (Civ. Code, § 3097, subd. (b).) This preliminary notice must be given no later than 20 days after the claimant has first furnished labor, service, equipment or materials to the jobsite. (Civ. Code, § 3097, subd. (c).) If the lien claimant has no actual knowledge of the identity of the construction lender, he is nevertheless charged with constructive notice of the lender's identity when it is revealed either by the recorded construction deed of trust or by the public building permit on file. (*Romak Iron Works* v. *Prudential Ins. Co.* (1980) 104 Cal.App.3d 767 [163 Cal.Rptr. 869].)

This case poses two issues concerning the claimant's duty to serve a preliminary notice on a construction lender or reputed construction lender.[1] The first question is whether the constructive notice imparted by those public records is imputed to a claimant only on the first day of work or whether that notice may be imputed anytime during the entire 20-day period. Construing the ambiguous statute most favorably to the lien claimant, we hold that constructive notice is imputed only on the first day of work. The second question is whether a prospective lender is a reputed construction lender within the meaning of the statute. We hold that he is if, but only if, a reasonable person, given the claimant's information, would have been led to believe that the prospective lender is the actual lender.

---

[1] A "*construction lender*" is defined as "any mortgagee or beneficiary under a deed of trust lending funds with which the cost of the work of improvement is, wholly or in part, to be defrayed, or any assignee or successor in interest of either, or any escrow holder or other party holding any funds furnished or to be furnished by the owner or lender or any other person as a fund from which to pay construction costs." (Civ. Code, § 3087.)
All further undesignated statutory references are to the Civil Code.

PROCEDURAL BACKGROUND

Plaintiff Kodiak Industries is a plumbing contractor doing business as Pioneer Plumbing (Pioneer). In a trial to the court, Pioneer proceeded on two causes of action for foreclosure of its mechanic's liens on 10 subdivision lots. At the time that Pioneer first commenced work, it neither had actual knowledge of any lender nor was any lender's identity then discoverable from the public records. Believing it had no further duty to investigate, Pioneer did not serve any notice. Thereafter, and before the 20-day period expired, defendant Bank of America (Bank) became the actual construction lender and recorded its construction deed of trust.

The lower court found Pioneer's rights cut off at the source for failure to give the mandatory preliminary notice to the Bank as construction lender within 20 days of commencing work at the jobsites. Although it rejected the claim that constructive notice had been imputed to Pioneer, the court ruled that "Section 3097 requires notice to prospective lenders under the facts herein." Since the requisite notice had not been given, judgment was accordingly entered declaring that Pioneer did not have a lien on the lots in question and that it take nothing against the defendants. Pioneer appeals from this reading of the procedural requirements. We reverse.

FACTS

Pioneer entered into two contracts with Hub Realty, Inc., doing business as Hub Construction, for the installation of plumbing facilities for houses to be built on 10 lots in a residential subdivision in Marysville. The properties subject to this litigation are located at two jobsites in the Gavin Estates subdivision (also known as East Park Estates) and consist of five lots each. The projects were numbered in Pioneer's records as job 112 (covering lots 205, 207, 218, 219, and 220) and job 118 (covering lots 201, 202, 203, 204, and 217). Hub Realty was both the owner and the general contractor for Gavin Estates and used Pioneer's services on an ongoing basis. The Bank, as it turned out, was the sole construction lender for the project.

Pioneer began work on job 112 on May 17, 1981, and finished it on August 20, 1981. It started work on job 118 on July 16, 1981, and finished on October 7, 1981. The construction permit from the City of Marysville for the lots covered by job 112 was issued on May 29, 1981 (12 days after work began), and the one for job 118 was issued on July 17, 1981 (1 day after work began). The space for the name of the "Construction Lender" was left blank on the permits. On May 27, 1981, Hub entered into a construction loan agreement with the Bank for $268,000 for construction of homes on the lots covered in job 112. It entered into a similar agreement

on July 21, 1981, with the Bank for $266,800 for the lots in job 118. The Bank recorded its construction deeds of trust on the lots covered in job 112 on May 28, 1981, 11 days after work began. It recorded similar deeds on the lots covered in job 118 on July 23, 1981, 7 days after work commenced. When it was not paid in full for its work, Pioneer recorded a mechanic's lien claim for job 118 on October 20, 1981, in the amount of $16,357.40, and one for job 112 on October 26, 1981, for $9,091.40. The Bank, of course, never received a preliminary notice for either job. Pioneer then timely filed its action to foreclose these liens.

Pioneer's witnesses testified it was their practice to serve notice on the construction lender if they learned of the lender's identity when the work commenced. Indeed, in two previous jobs in April 1981 in the same subdivision project Pioneer sent preliminary notices to the Bank as the construction lender. In each instance, Hub had told Pioneer that Bank of America was the construction lender. On another occasion in the same period when dealing with Hub on a different project in another county, Pioneer had served the preliminary notice on Wells Fargo Bank after Hub identified that bank as the construction lender.

Pioneer's witnesses also testified that at the start of each of the two jobs involved in this appeal, Hub was asked if there were a construction lender for the job. Although the witnesses no longer had a specific recollection of their conversations with Hub's employees, based on their past practices they assumed in retrospect from the fact no notice had been sent to the Bank on either job that they were told no construction lender had been obtained. The trial court accepted this assumption as the true state of affairs. Pioneer did not undertake any independent investigation of Hub's representation that there was no construction lender for the two jobs. Rick Shirley, the principal shareholder of Pioneer, testified that as he understood the Mechanics' Lien Law, if there were no lender of record on the date work commenced, no preliminary notice to any subsequent lender was required. In his view, there was "no reason to go back and check." He further testified that he was not surprised that Hub did not have a lender for these jobs because it was a "large concern" and might be "self-funding."

In sum, no construction permit was filed before the start of either job, and the building permits which were eventually issued did not show the name of any construction lender. On both jobs, work started before the construction loan was consummated. The loan papers were not signed nor the construction deeds of trust recorded until a week or more after Pioneer began each job.

In its action to foreclose on these liens, Pioneer named essentially three groups of defendants: homeowners, purchase money lenders, and the con-

struction loan lender. Since the validity of Pioneer's liens depends on notice to the construction loan lender, our discussion confines itself to defendant Bank.

DISCUSSION

I

Pioneer contends that the trial court erred in ruling that it was required to serve a preliminary notice upon the Bank as a prospective lender. The Bank counters with a two-pronged argument. It first contends that Pioneer had constructive knowledge of its existence as the actual construction lender within the time required for serving preliminary notices. It alternatively contends that as a prospective lender it was a "reputed" lender for purposes of that notice. For the reasons which follow, we reject both of the Bank's contentions.

A

"The California mechanics' lien derives from article XX, section 15, [now article XIV, section 3] of the California Constitution and chapters 1 and 2 of title 15, part 4, division 3 of the Civil Code." (*Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 808 [132 Cal.Rptr. 477, 553 P.2d 637].)[2] Under the Mechanics' Lien Law, all "[m]echanics, materialmen, contractors, subcontractors" and other designated persons who perform labor upon or furnish materials to a work of improvement "shall have a lien upon the property . . . for the value of such labor done or materials furnished . . . ." (§ 3110.) In order to perfect that lien a private works claimant must give a preliminary 20-day notice as required by section 3097 and thereafter must record his claim of lien within 90 days of completion of the improvement. (§§ 3114, 3116.) ▮ ▮▮▮ Section 3097 provides: "'Preliminary 20-day notice (private work)' means a written notice from a claimant that is given prior to the recording of a mechanic's lien . . . and is required to be given under the following circumstances: . . . [¶]

---

[2]Article XIV, section 3 of the California Constitution reads: "Mechanics, persons furnishing materials, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

(b) Except the contractor,[3] or one performing actual labor for wages, or an express trust fund described in Section 3111, all persons who have a direct contract with the owner and who furnish labor, service, equipment, or material for which a lien otherwise can be claimed under this title, . . . must, as a necessary prerequisite to the validity of any claim of lien, . . . cause to be given to the construction lender, if any, or to the reputed construction lender, if any, a written preliminary notice as prescribed by this section."

The preliminary notice must "be given not later than 20 days after the claimant has first furnished labor, service, equipment, or materials to the jobsite . . . ." (§ 3097, subd. (c).) ■ After the requisite preliminary notice has been given and the claim of lien is thereafter timely recorded, "the mechanics' lien constitutes a direct lien (§ 3123) on the improvement and the real property to the extent of the interests of the owner or the person who caused the improvement to be constructed (§§ 3128, 3129). The lien is subordinate to recorded encumbrances antedating the commencement of the work of improvement (*Walker* v. *Lytton Sav. & Loan Assn.* (1970) 2 Cal.3d 152, 159 [84 Cal.Rptr. 521, 465 P.2d 497]; see § 3134), but takes priority over all subsequent encumbrances (§ 3134)." (*Connolly Development, supra,* 17 Cal.3d at p. 808.) Thus mechanics' liens are "preferred to any lien, mortgage, deed of trust, or other encumbrance upon the work of improvement and the site, which attaches subsequent to the commencement of the work of improvement, and also to any lien, mortgage, deed of trust, or other encumbrance of which the claimant had no notice and which was unrecorded at the time of the commencement of the work of improvement." (§ 3134.)

As we have noted, Pioneer had a direct contract with Hub, who was both the owner of the property and the original contractor. Pioneer consequently

---

[3]The exception of the "contractor" is puzzling here. Presumably it refers to someone other than "all persons who have a direct contract with the owner." But section 3088 defines a "contract" as an "agreement between an owner and any original contractor providing for the work of improvement or any part thereof." And section 3095 in turn defines "original contractor" as "any contractor who has a direct contractual relationship with the owner." As has been noted, "[t]he Mechanic's Lien Law often is inartfully drawn and leaves much room for doubt, as in this instance." (Killeen, *The 20-Day Preliminary Notice in Private Construction Work* (1977) 53 L.A. Bar J. 113, 120, fn. 42.) Despite this apparent contradiction because the single word "contractor" is not defined, it has sensibly been construed to mean the general or prime contractor for the entire project. (See *Korherr* v. *Bumb* (9th Cir. 1958) 262 F.2d 157, 161-162, construing the phrase "except the contractor" in former Code Civ. Proc., § 1190.1, subd. (h) [Stats. 1951, ch. 1382, § 1, p. 3305], the predecessor of § 3097, as referring to the general or prime contractor; see also 1 Miller & Starr, Current Law of Cal. Real Estate (rev. pt. 2, 1975) Pre-lien Notice, § 10:20, pp. 550-552, noting that if the term "contractor" referred to the original contractor, § 3097, subd. (b) "would read that 'all persons having a direct contract with the owner, except any contractor who has a direct contractual relationship with the owner' must give the notice to the lender.") (*Ibid.*)

had no statutory obligation to give a preliminary notice to Hub. (§ 3097, subds. (a) & (b).)

It was established at trial that the Bank and Hub had not formally entered into a lender-borrower relationship on the two jobs at the time Pioneer first began work on them. Thus, the Bank was not actually a construction lender for either job on the date work began. Nevertheless, in an argument rejected below, the Bank asserts that Pioneer was given constructive notice of its identity as the actual lender when it recorded the construction loan deed of trust during the 20-day period. Since it had constructive notice, so the argument goes, Pioneer's failure to serve the Bank with the preliminary notice is fatal to its claim of lien.

In *Romak Iron Works* v. *Prudential Ins. Co.*, *supra*, 104 Cal.App.3d 767, the court held that subdivisions (i) and (j) of section 3097 imposed a duty on the claimant to examine the building permit and recorded construction trust deed for the purpose of ascertaining the existence and identity of a construction lender to whom he must deliver the preliminary 20-day notice.[4] (*Id.*, at p. 775.) "If he fails to examine the two sources, subdivisions (i) and (j) operate to charge him with constructive notice of the information recorded in either." (*Ibid.*) Because both documents were of record before the claimant commenced work in that case, the *Romak* court did not have occasion to consider whether constructive notice continues to be imparted when the documents become of record after the claimant begins work. The statute is ambiguous on this question because it provides a 20-day period but does not specify at what point in the period the claimant must send the

---

[4]Subdivision (i) of section 3097 directs that "[e]very city, county, city and county, or other governmental authority issuing building permits shall, in its application form for a building permit, provide space and a designation for the applicant to enter the name, branch designation, if any, and address of the construction lender and shall keep the information on file open for public inspection during the regular business hours of the authority. [¶] If there is no known construction lender, that fact shall be noted in such designated space. Any failure to indicate the name and address of the construction lender on such application, however, shall not relieve any person from the obligation to give to the construction lender the notice required by this section."

Subdivision (j) of that section provides: "A mortgage, deed of trust, or other instrument securing a loan, any of the proceeds of which may be used for the purpose of constructing improvements on real property, shall bear the designation "Construction Trust Deed" prominently on its face and shall state all of the following: (1) the name and address of the lender, and the name and address of the owner of the real property described in the instrument, and (2) a legal description of the real property which secures the loan and, if known, the street address of the property. The failure to be so designated or to state any of the information required by this subdivision shall not affect the validity of any such mortgage, deed of trust, or other instrument. [¶] Failure to provide such information on such an instrument when recorded shall not relieve persons required to give preliminary notice under this section from such duty. [¶] The county recorder of the county in which such instrument is recorded shall indicate in the general index of the official records of the county that such instrument secures a construction loan."

notice. It states only that the notice "shall be given *not later* than 20 days after the claimant has first furnished labor, service, equipment, or materials to the jobsite." (§ 3097, subd. (c); italics supplied.) The Bank takes this language and ipse dixit extends the lien claimant's duty to check the records throughout the entire 20-day period. In the Bank's view, a "claimant cannot simply check once on the first day of construction and then assume thereafter that no construction lender will be involved." But this blithe assertion is not supported by any citation of authority, for indeed the question is an open one. As one treatise asks, "was it the duty of the sub or supplier to continue to check the records from time to time, under peril of losing his lien? Or is it the lender's duty, in the face of work in progress, to ascertain who are the subcontractors and suppliers and endeavor to see that they are paid out of the loan proceeds? To our knowledge, there is no appellate decision on the point at this time." (Marsh, Cal. Mechanics' Lien Law (4th ed. 1985) § 4.30, p. 4-39.) We now place the duty upon the lender.

In essence, the Bank's reading would not only impute knowledge of all documents filed during the 20 days to a claimant failing to check the records, but would also require even a lien claimant actually checking the records to either recheck every day or wait until the 20th day or else risk being assigned constructive knowledge of any subsequently filed documents. To impose a duty on the claimant both to check and recheck the records and then to serve the notice on the last day seems unduly onerous and fraught with unnecessary risks of lien forfeiture caused by unavoidable delays on the final day. Such a construction would be inconsistent with "[t]he policy of the law favor[ing] protection of laborers and materialmen." (*Truestone, Inc.* v. *Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 723 [209 Cal.Rptr. 757].)

█ The California Supreme Court has recognized that "courts have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen." (*Connolly Development, supra,* 17 Cal.3d at pp. 826-827, fn. omitted.) In our view it would be manifestly unfair to a claimant actually checking the records to penalize him by imputing knowledge of subsequent actions by the lender. Since there is no explicit indication that the Legislature intended the lien claimant to examine the public records every day throughout the 20-day period, the rule of liberal construction precludes such an interpretation. █ We conclude therefore that a lien claimant need check the records only once, whether that be the day he begins construction or at some other point before the end of the 20 days. Once a claimant has inspected the records during the notice period, he has no further duty of reinspection. (Cf. *Schrader Iron Works, Inc.* v. *Lee* (1972) 26 Cal.App.3d 621, 631 [103

Cal.Rptr. 106].) Consequently, a claimant who inspected the records on the first day cannot be charged with constructive notice of later records. As there is no basis for distinguishing between the situations, the non-inspecting claimant stands in the same position. The claimant who does not inspect the records takes the risk that on the first day of work they might reveal the identity of the construction lender. But that is the extent of his risk. Since no claimant has a duty to inspect the records every day for 20 days, we hold that constructive notice can only be based on the state of the public records on the first day of work. Because there were no documents on file on the first day of work which disclosed the Bank as the construction lender, Pioneer cannot be charged with constructive notice.

## B

██ Having rejected the Bank's argument that its status as actual construction lender should have been imputed to Pioneer, we next consider whether the Bank was entitled to a preliminary notice as a reputed construction lender. This requires an examination of the meaning of the phrase "reputed construction lender," which is not defined in the mechanic's lien statutes.

The trial court ruled that section 3097 imposed an affirmative duty upon the lien claimant to make a reasonable effort to ascertain the identity of the construction lender. It further found that Pioneer "did not make such reasonable efforts and that if made, the Bank would have been disclosed as a prospective lender." In our view, the statute does not impose any such duty of investigation.

██ The term "reputed" has been used in the mechanic's lien statutes since at least 1895. (*Brown Co.* v. *Appellate Department* (1983) 148 Cal.App.3d 891, 900 [196 Cal.Rptr. 258].) It is presently used to refer to owners, contractors and construction lenders. (See §§ 3084, subd. (2); 3097, subds. (a) & (b).) In the earliest discussion of the meaning of "reputed owner" for the purposes of former Code of Civil Procedure section 1187 (Stats. 1887, ch. 137, § 3, p. 154)—the predecessor to section 3084 governing the filing of a claim of lien—the Supreme Court noted that this phrase was included to protect a lien claimant from forfeiting his lien if in good faith and based on "external information" he names one person as owner and ascertains only later some other person in fact was the owner. (*Corbett* v. *Chambers* (1895) 109 Cal. 178, 184-185 [41 P. 873].) "The terms of the section clearly indicate that it was not the intention of the legislature that in the claim of lien which he files for record the claimant shall state the name of the real owner, at the risk of losing his lien if it shall turn out that he was in error. The provision therein that the claimant shall give the 'name

of the owner or reputed owner, if known,' implies that, if he does not know the name of the owner, he may state this fact, and perfect his lien without naming an owner, and, also, that if, in good faith, he gives the name of a reputed owner, he shall not lose his lien if he shall afterward ascertain that some other person was the owner." (*Id.*, at p. 184, citations omitted.) This construction was reaffirmed in *Santa Cruz Rock Pavement Co.* v. *Lyons* (1901) 133 Cal. 114, 119 [65 P. 329], when the court upheld the validity of a mechanic's lien where the evidence supported a good faith belief by the lienholder that the person named in the claim of lien was the reputed owner. (See also *Diamond M. Co.* v. *Sanitary F. Co.* (1925) 70 Cal.App. 695, 705-706 [234 P. 322].)

More recently, the Court of Appeal had occasion to consider the meaning of that phrase in *Brown Co.* v. *Appellate Department, supra,* 148 Cal.App.3d 891. It held that the "term 'reputed owner' must be given a meaning in the context of the statutory scheme in which it appears and must be consistent with the purposes of the statutory provisions. Considering these and the historical meaning ascribed to the term 'reputed owner' as used in the mechanic's lien law we are persuaded the 'reputed owner' who may lawfully be given the preliminary notice pursuant to sections 3097 and 3098 is a person or entity reasonably and in good faith believed to be the owner by those involved with the work of improvement including the general contractor and those furnishing labor, service, equipment or material to be used in the work of improvement." (*Id.*, at p. 900, citations omitted.) The *Brown Co.* court therefore rejected the contention that the claimant "was not entitled to rely on the ownership information provided by the employee of the general contractor but was required to examine other sources of information such as the building permit, the tax assessor's records or the construction contract." (*Id.*, at p. 901.) Instead, "the question of what efforts [the lien claimant] made to ascertain the name of the owner goes not to the definition of 'reputed owner' but to the question of whether [the claimant] reasonably and in good faith believed [the party served with notice] to be the owner or reputed owner."[5] (*Ibid.*)

---

[5] In distinguishing *Romak Iron Works* v. *Prudential Ins. Co.* (1980) 104 Cal.App.3d 767, the *Brown Co.* court suggested in dictum that a claimant's duty of inquiry might be different if he is told that there is no lender rather than being misinformed about the lender's identity. "[T]he plaintiff in the *Romak* case was given no name and was told there was no known construction lender. Here, on the other hand, [the claimant] was given the name and address of a specific entity said to be the owner by the employee of the general contractor. There is a significant difference between being given the name and address of the owner upon inquiry and being given no name or address for the construction lender. The latter should perhaps provoke further inquiry, especially in view of the fact that construction of a project of any substantiality without a construction lender is a rarity." (*Brown Co., supra,* 148 Cal.App.3d at p. 902.) We reject that dictum because it confuses inquiry duty with good faith. It is only when the claimant mistakenly serves notice on the wrong party that the extent of his inquiry becomes critical to his good faith belief. Unless he makes some reasonable

We discern no sound reason in law or logic to construe "reputed" any differently when it applies to a construction lender instead of an owner. Accordingly, we adopt the *Brown Co.* formulation and hold that a "reputed construction lender" is a person or entity reasonably and in good faith believed by the claimant to be the actual construction lender.

The question here, however, is not whether the claimant was saved by serving a reputed construction lender but whether he is defeated by not serving one. Although the history of the statute reveals that the provision was added to protect mistaken claimants, the statute nevertheless requires a claimant to serve either the lender or the reputed lender. Consequently, if a claimant has sufficient information to reasonably believe that a putative lender is the actual lender, he must either serve such a lender or bear the risk that the putative lender is the actual lender.[6] The test is an objective one and a claimant must be deemed to possess sufficient information about a reputed lender when a reasonable person, given the claimant's information, would have been led to believe in good faith that the putative lender was the actual lender. The statute thus cut both ways. A claimant is entitled to serve a reputed lender and a reputed lender is entitled to the notice. We add only that the information on which a reasonable claimant should rely must be cloaked with sufficient indicia of reliability—such as statements from the owner, general contractor, or lender itself or their agents—so as to distinguish this information from a mere guess or some ill-founded conjecture. Since possession of such presumptively reliable information would protect a lien claimant from a mistake, it is only fair to hold that possession of such knowledge imposes a concomitant duty to notify the lender thus indicated.

We now examine the lower court's resolution of this question. Equating a prospective lender with a reputed one, the trial court reasoned that if Pioneer had checked the recording indices it would have discovered that Hub had previously executed deeds of trust in favor of the Bank for

---

inquiry, a claimant normally cannot have a good faith belief about the identity of the construction lender. But when the claimant is told by a responsible representative that there is no lender and does not serve any reputed lender, his good faith belief is not in issue and his only duty of inquiry is to check those records which will impute constructive notice to him.

[6] If the claimant fails to give the preliminary notice to the reputed construction lender and that reputed lender turns out *not* to be the actual lender, then the claimant's lien rights are not defeated. In that circumstance, the failure to give notice to the reputed lender cannot possibly prejudice the true construction lender. To hold the lien forfeited when the true lender would not have been served in any event would result in "the defeat of the lien on meaningless technicalities." (*Truestone, Inc.* v. *Simi West Industrial Park II, supra,* 163 Cal.App.3d at p. 723.) But when the claimant fails to give notice to the reputed lender, he bears the risk that the reputed lender is in fact the true lender. In that case, the failure to give notice will defeat any claim of lien.

other homes on other lots in the subdivision and that no other bank had construction deeds of trust on the subdivision. While that may well be true, the statute imposes no such duty on a claimant to hunt down a potential lender by searching the records of property not involved in the work of improvement. Moreover, the question is not whether a financial institution is a likely prospect for funding but is whether it was reputed to be the existing lender. That question turns on what information the claimant possessed about a putative lender. So framed, it is clear that the judgment below cannot stand.

Pioneer was advised by the owner/contractor that there was no construction lender. No reason is advanced here why a reasonable claimant should have disbelieved that representation from a presumptively reliable source. It is true that Pioneer knew that the Bank had funded some of the other construction in the subdivision. But in light of the owner's representation, it would have been pure conjecture for Pioneer to surmise that the Bank, having funded some of Hub's projects before, would be the construction lender for these jobs as well. Given the owner's representation and in the absence of a shred of affirmative evidence to the effect Pioneer knew the Bank was or would be the construction lender for *these* jobs, the conclusion holding the Bank to be the reputed construction lender cannot be supported on this record. Since the Bank was neither the reputed construction lender nor the actual construction lender at the time these jobs were begun, Pioneer had no duty to serve the Bank with a preliminary notice. Pioneer's liens, therefore, are not invalid for failure to give notice under section 3097.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with our holding that Pioneer's mechanic's liens are valid.

Puglia, P. J., and Sims, J., concurred.

A petition for a rehearing was denied September 25, 1986.

---

*See footnote, *ante,* page 75.