[No. E048688. Fourth Dist., Div. Two. Aug. 31, 2010.]

FORCE FRAMING, INC., Plaintiff and Appellant, v.
CHINATRUST BANK (U.S.A.), Defendant and Respondent.

1370

**Counsel**

Carno & Carlton, Andrew C. Carlton, Anna M. Carno and Princess M. Cooper for Plaintiff and Appellant.

Abdulaziz, Grossbart & Rudman, Bruce David Rudman and Sam K. Abdulaziz for Roofing Contractors Association of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Edward Alberola for Southern California Contractors Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Kamine Collings & Phelps, Michaelbrent Collings, Bernard Kamine, Marcia Kamine and Daniel J. Phelps for Engineering Contractors' Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps, Steven S. Wall and Jeffrey A. Feasby for Defendant and Respondent.

OPINION

**MILLER, J.**—Force Framing, Inc. (Force Framing), sued Chinatrust Bank (U.S.A.) (Chinatrust) for a bonded stop notice.[1] (Civ. Code, § 3083.) The trial court granted Chinatrust's cross-motion for summary judgment (Code Civ. Proc., § 437c), because Force Framing served the statutorily required 20-day preliminary notice (Civ. Code, § 3097) on East West Bank, not Chinatrust. Force Framing contends that the trial court erred by granting Chinatrust's cross-motion for summary judgment because East West Bank qualified as the "reputed lender." (Civ. Code, § 3097, subd. (a).) Various amici curiae have filed briefs in support of Force Framing's contentions. We reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

In or around September 2006, Force Framing and 92 Magnolia, LLC (Magnolia), entered into a written contract. Magnolia owned a property in Riverside where it was constructing condominiums (the project). The contract reflected that Force Framing would provide framing labor, material, equipment and services for the project; and Magnolia would pay Force Framing $1,460,233.[2]

At or about the time Force Framing began working on the project, Magnolia gave Force Framing a " 'Preliminary Information' " sheet. The preliminary information sheet listed Magnolia's contact information, the general contractor's contact information, the jobsite address, and the lender's contact information. The lender was identified as East West Bank, in Diamond Bar; however, Chinatrust was actually the construction lender.

---

[1] A stop notice, unlike a mechanic's lien, does not give the stop notice claimant a lien upon tangible property; rather, it attaches an obligation to the lender's agreement to provide credit to the owner. Essentially, the filing of a stop notice is akin to a garnishment of the owner's credit. (*Connolly Development, Inc. v. Superior Court* (1976) 17 Cal.3d 803, 813 [132 Cal.Rptr. 477, 553 P.2d 637]; Civ. Code, § 3083.) Specifically, "[w]hen a stop notice is filed, the lender, threatened with personal liability if it disregards the notice, may divert credit needed to pay for future construction to comply with the stop notice claim. Thereby denied the money on which he relied to complete the project, the owner may be forced into default on the loan, and consequently lose his property." (*Connolly*, at p. 813, fns. omitted.)

[2] Force Framing's contract with Magnolia is somewhat convoluted. The contract is titled "Subcontract Agreement"; however, Magnolia is referred to as "Owner" and Force Framing is referred to as "Subcontractor." Magnolia initialed the pages of the contract next to the lines that read "Owner"; however, at the end of the contract, Magnolia signed the contract as "Project Manager" and "Director of Construction," and gave a construction management/general contractor's license number. In Force Framing's complaint, it alleges that Magnolia acted as the prime contractor for the project. In sum, it is unclear if Magnolia signed the contract as the owner of the property or as a prime or general contractor.

Force Framing served East West Bank, in Diamond Bar, with the statutorily required 20-day preliminary notice. (Civ. Code, § 3097.) Force Framing's account manager declared that she sent the preliminary notice to East West Bank "[b]ased on the information contained in Magnolia's 'Preliminary Information' sheet."

In its complaint, Force Framing alleged that it completed its obligations under the contract; however, Magnolia still owed $1,398,882. Force Framing alleged that to the extent Chinatrust improperly disbursed funds subsequent to the service of Force Framing's stop notice, and that funds were now inadequate to pay Force Framing, then Chinatrust should be required to pay Force Framing. Force Framing filed its complaint on December 18, 2007.

Chinatrust moved for summary judgment. Chinatrust argued that Force Framing sent the required preliminary 20-day notice of intent to file a stop notice to East West Bank, not Chinatrust; therefore, Chinatrust was entitled to summary judgment because Force Framing did not comply with the statutory stop notice requirements. Chinatrust explained that it recorded a deed of trust against the property, which gave Force Framing constructive notice that Chinatrust was the actual construction lender.

Force Framing opposed Chinatrust's cross-motion for summary judgment. Force Framing argued that it did comply with the statutory stop notice requirements because it served the reputed lender, i.e., East West Bank. (Civ. Code, § 3097, subd. (a).)[3] Force Framing asserted that it was reasonable to rely on Magnolia's representation that East West Bank was the construction lender, and therefore, Force Framing was not obligated to search the county records for Chinatrust's deed of trust.

The trial court found that a subcontractor who seeks a stop notice has a duty to investigate who owns the construction loan. The trial court concluded that "the statute and the case law require[] that it be incumbent upon the contractor or subcontractor to do that minimal research." In other words, the trial court held that a subcontractor has to be able to show that he searched the county records, or somehow researched who owns the construction loan, in order to prove that he reasonably, in good faith, accidentally served the wrong lender. Since Force Framing did not inspect the county records, or otherwise verify the owner of the construction loan, the trial court concluded that Force Framing could not be excused from serving the wrong bank.

---

[3] All further statutory references will be to the Civil Code, unless otherwise indicated.

Therefore, Force Framing's claim—that Chinatrust improperly disbursed funds following Force Framing's attempt to serve the 20-day notice—could not stand, because Chinatrust cannot be held responsible for improperly distributing funds when the 20-day preliminary notice was not properly served. Consequently, the trial court granted Chinatrust's cross-motion for summary judgment.

## DISCUSSION

In its opening brief, Force Framing presents a variety of arguments under different headings; however, Force Framing's overarching contention is that the trial court erred by granting Chinatrust's cross-motion for summary judgment. We agree.

We independently examine the record. In performing our de novo review, we view the evidence in the light most favorable to Force Framing. (*O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284 [30 Cal.Rptr.3d 507, 114 P.3d 753].)

### A. *NOTICE*

#### 1. *FORCE FRAMING'S CONTENTION*

Force Framing contends that the trial court erred by granting summary judgment because Force Framing gave the 20-day preliminary notice to the reputed lender, and therefore complied with the statutory notice requirements. We agree.

##### a) *Statutory Background*

In order for a bonded stop notice to be effective, the stop notice claimant must give a 20-day preliminary notice to the construction lender or the reputed construction lender. (§ 3097.)

##### b) *Case Law Background*

There are three cases that dominate a discussion about serving a preliminary notice on a reputed lender: (1) *Brown Co. v. Appellate Department* (1983) 148 Cal.App.3d 891 [196 Cal.Rptr. 258] (*Brown*); (2) *Romak Iron Works v. Prudential Ins. Co.* (1980) 104 Cal.App.3d 767 [163 Cal.Rptr. 869] (*Romak*); and (3) *Kodiak Industries, Inc. v. Ellis* (1986) 185 Cal.App.3d 75 [229 Cal.Rptr. 418] (*Kodiak*).

██ Two of the cases set forth similar definitions of the term "reputed construction lender." Essentially, a " 'reputed construction lender' is a person or entity reasonably and in good faith believed by the claimant to be the actual construction lender." (*Kodiak, supra,* 185 Cal.App.3d at p. 87; see also *Brown, supra,* 148 Cal.App.3d at p. 900.) The same two cases also set forth similar tests for analyzing whether a claimant held a good faith belief that the reputed lender was the actual lender, i.e., would a reasonable person, given the claimant's information, have been led to believe in good faith that the reputed lender was the actual lender? (*Brown,* at pp. 901–902; *Kodiak,* at p. 87.)

The cases diverge when discussing how a claimant may prove that he held a good faith belief that the reputed lender was the actual lender. In *Romak,* the appellate court held that a good faith belief that the reputed lender was the actual lender should be proven by evidence that the claimant examined county records to ascertain the identity of the construction lender, e.g., the building permit or construction deed of trust. (*Romak, supra,* 104 Cal.App.3d at pp. 774–775.) In *Brown,* this court held that a claimant did *not* need to check county records in order to demonstrate that he held a good faith belief that the reputed lender was the actual lender. (*Brown, supra,* 148 Cal.App.3d at p. 901.) Rather, this court concluded that a good faith belief could be proven by evidence that the claimant relied upon information supplied by the general contractor. (*Id.* at p. 903.) In *Kodiak,* the appellate court held that "the information on which a reasonable claimant should rely must be cloaked with sufficient indicia of reliability—such as statements from the owner, general contractor, or lender itself or their agents—so as to distinguish this information from a mere guess or some ill-founded conjecture." (*Kodiak, supra,* 185 Cal.App.3d at p. 87.)

c) *Analysis*

It appears from the record that Force Framing began working on the project around July 2007. At or about the time Force Framing began working on the project, Magnolia gave Force Framing a " 'Preliminary Information' " sheet. The preliminary information sheet listed Magnolia's contact information, the general contractor's contact information, the jobsite address, and the lender's contact information. The lender was identified as East West Bank, in Diamond Bar. Force Framing served its preliminary notice on East West Bank, in Diamond Bar. Force Framing's account manager declared that she sent the preliminary notice to East West Bank "[b]ased on the information contained in Magnolia's 'Preliminary Information' sheet."

■ Force Framing supplied evidence that it believed the reputed lender was the actual lender, based upon the preliminary information sheet given to it by Magnolia. Magnolia was the owner of the property, and served as the general contractor on the project. It appears from the record that there was no reason for Force Framing to doubt the accuracy of the information supplied by Magnolia. Therefore, the evidence reflects that Force Framing could have held a good faith belief that East West Bank was the actual lender, based upon the standard set forth by this court in *Brown*. Consequently, the trial court erred when it granted summary judgment, because there is a triable issue of fact regarding the reasonableness of Force Framing's belief that East West Bank was the lender for the project.[4,5]

## 2. CHINATRUST'S CONTENTIONS

### a) Romak

Chinatrust contends that Force Framing, as a matter of law, could not have held a good faith belief that East West Bank was the actual lender, because Force Framing did not check the county records for the deed of trust that Chinatrust recorded in 2005. In other words, Chinatrust contends that the trial court did not err by relying on the *Romak* opinion.

■ The trial court was not bound to follow this court's decision in *Brown*, in light of the conflicting opinion issued by the *Romak* court. (*McCallum v. McCallum* (1987) 190 Cal.App.3d 308, 315, fn. 4 [235 Cal.Rptr. 396].) However, our review of the judgment is de novo, and we reaffirm our opinion from *Brown*, rather than follow the *Romak* opinion because our Supreme Court has held that mechanics' lien laws should be liberally construed in favor of protecting laborers and materialmen. (*Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882, 889 [64 Cal.Rptr.2d 578, 938 P.2d 372].) We believe that applying the *Romak* court's holding— requiring claimants on payment bonds to search county records—is contrary

---

[4] Force Framing submitted a request for judicial notice. The request included documents supplied by Legislative Intent Service, Inc., concerning "the enactment of Assembly Bill 3784 of 1986." We have not delved into statutory interpretation or legislative history. Accordingly, we deny Force Framing's request for judicial notice, because the documents are not necessary for our resolution of the issues presented.

[5] Our conclusion and disposition are intended to reverse the granting of Chinatrust's cross-motion for summary judgment, because there is a triable issue of fact as to whether Force Framing held a good faith belief that East West Bank was the actual lender. Our conclusion should not be interpreted as a finding that Force Framing did have a good faith belief that East West Bank was the actual lender—that is a matter to be decided by the trier of fact.

to our Supreme Court's directive that mechanics' lien laws be construed in favor of laborers and materialmen, especially when the laborers are relying on seemingly correct information about the construction lender provided by the owner and general contractor. ▮ In other words, if a laborer or materialman has reasonably relied on an owner's and/or general contractor's statements identifying a lender, then the laborer or materialman does not need to check county records to prove that he had a good faith belief that the lender was the actual lender. In sum, we do not find Chinatrust's argument to be persuasive.

### b)  Brown

Next, Chinatrust contends that Force Framing cannot rely on *Brown* because that case concerned serving a 20-day preliminary notice on an owner, not a lender. We disagree.

▮ Section 3097, subdivision (a), requires that a preliminary notice be sent to "the owner or reputed owner, to the original contractor, or reputed contractor, and to the construction lender, if any, or to the reputed construction lender, if any . . . ." Section 3097, subdivision (m) provides, "Every contract entered into between an original contractor and subcontractor, and between subcontractors, shall provide a space for the name and address of the owner, original contractor, and any construction lender."

Because reputed lenders and reputed owners are grouped together in the statute, we see no reason why there would be a different test for determining if a claimant held a good faith belief that a reputed owner was the actual owner, versus determining if a claimant held a good faith belief that a reputed lender was the actual lender. Accordingly, we are not persuaded that it is improper to rely upon *Brown* for the test of determining whether Force Framing held a good faith belief that East West Bank was the actual lender. (See *Kodiak, supra*, 185 Cal.App.3d at p. 87 [same conclusion].)

### c)  Kodiak

Next, Chinatrust asserts that the *Kodiak* opinion confirms the *Romak* rule that a recorded construction deed of trust puts a claimant on constructive notice of the actual lender's identity, and therefore, Force Framing had constructive notice that Chinatrust was the actual lender and could not have held a good faith belief that East West Bank was the actual lender. We disagree.

In *Kodiak*, Bank of America, the construction lender, complained that it did not receive the required 20-day preliminary notice from Kodiak, a plumbing subcontractor. (*Kodiak, supra*, 185 Cal.App.3d at pp. 79–80.) The legal issues in the case developed because Bank of America did not become a formal lender on the project until 11 days *after* Kodiak began working on the project, and Kodiak's witnesses testified that it was Kodiak's practice to serve notice on a construction lender, "if they learned of the lender's identity when the work commenced." (*Id.* at p. 80.)

Bank of America raised two arguments regarding why Kodiak erred by not serving it with the required 20-day preliminary notice. First, Bank of America asserted that Kodiak had constructive knowledge of its status as the construction lender during the notice period and, therefore, should have served Bank of America with the preliminary notice. (*Kodiak, supra*, 185 Cal.App.3d at p. 81.) Second, Bank of America contended that during the period in which it was a "prospective lender" on the construction project, it qualified as a "reputed lender" for purposes of notice. (*Ibid.*)

In regard to Bank of America's first contention, the appellate court relied on the *Romak* opinion for its discussion of constructive notice. (*Kodiak, supra*, 185 Cal.App.3d at p. 83.) Ultimately, the appellate court held that "constructive notice can only be based on the state of the public records on the first day [a subcontractor begins] work [on a project]." (*Kodiak, supra*, 185 Cal.App.3d at p. 85.) In other words, if a subcontractor checks the county records for a construction lender's information on the first day of work on a project, then the subcontractor is not required to repeatedly check the county records to determine if the lender's information has changed.

When the appellate court discussed Bank of America's second contention, it analyzed the meaning of the term "reputed construction lender," and relied on this court's opinion in *Brown*. (*Kodiak, supra*, 185 Cal.App.3d at p. 85.) The *Kodiak* court adopted the *Brown* definition of "reputed lender"—"a person or entity reasonably and in good faith believed by the claimant to be the actual construction lender." (*Kodiak,* at p. 87.) However, the *Kodiak* court augmented the *Brown* rule by writing, "We add only that the information on which a reasonable claimant should rely must be cloaked with sufficient indicia of reliability—such as statements from the owner, general contractor, or lender itself or their agents—so as to distinguish this information from a mere guess or some ill-founded conjecture." (*Kodiak,* at p. 87.)

▉ In sum, *Kodiak* has two holdings: (1) a reputed lender is a person or entity reasonably and in good faith believed by the claimant to be the actual construction lender; and (2) if a claimant relies on county records to determine the identity of the construction lender, then the claimant is only

required to check the county records once, after starting work on the project. Consequently, we disagree that *Kodiak* confirmed the *Romak* holding regarding constructive notice; rather, the *Kodiak* court cited *Romak* while discussing the concept of constructive notice, but explicitly adopted the "good faith belief" formulation set forth in *Brown.* (*Kodiak, supra,* 185 Cal.App.3d at pp. 83, 87.) Therefore, we are not persuaded that, as a matter of law, pursuant to *Kodiak,* Force Framing had constructive notice that Chinatrust was the actual lender and could not have held a good faith belief that East West Bank was the actual lender.

### d) *Statute*

■ Section 3097, subdivisions (i) and (j), require the identity of a construction lender to be disclosed in building permits and deeds of trust. Chinatrust contends that these subdivisions express a legislative intent to apply the principle of constructive notice to stop notice claimants. We disagree. The information about lenders included in public documents is useful for stop notice claimants that (1) have not received reliable information regarding a lender's identity, or (2) have reason to doubt the information received about a lender. In other words, if a stop notice claimant has (1) no lender information, or (2) untrustworthy lender information, then the stop notice claimant needs to check county records, e.g., building permits and recorded deeds of trust, in order to prove that he held a good faith belief that the reputed lender was the actual lender. However, a stop notice claimant who has relied on seemingly correct lender information from the owner and/or general contractor is not required to provide proof of checking the county records in order to raise a triable issue of fact as to whether he held a good faith belief that the reputed lender was the actual lender. In sum, we are not persuaded by Chinatrust's argument.

### B. *TRIABLE ISSUE OF FACT*

Force Framing contends that the trial court erred by granting summary judgment because the case contains triable issues of fact. Force Framing contends that a triable issue of fact exists because Force Framing was exempt from having to serve notice on Chinatrust. Next, Force Framing asserts that a triable issue of fact exists because Chinatrust did include all the required information on its deed of trust. We have concluded *ante,* that the record supports a finding that a triable issue of fact exists regarding whether Force Framing properly served its preliminary notice upon the reputed lender. Accordingly, we do not address these remaining contentions, which also concern the issue of notice.

## DISPOSITION

We reverse the order granting Chinatrust's motion for summary judgment. Appellants are awarded their costs on appeal.

Richli, Acting P. J., and King, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 1, 2010, S187171.